(97 App. Div. 514.)

KAUFMAN v. ROSENSHINE et al.

(Supreme Court, Appellate Division, First Department. November 11, 1904.)

1. MONEY LENT—RECOVERY—EVIDENCE.
   In an action to recover money loaned, evidence *held* to sustain a verdict that plaintiff's assignor had been given the money by defendants as a wedding present, and that she had deposited the sum with defendants under an agreement that it should be returned to her on demand, with such profits as might have been earned thereon while it was used in defendants' business.

2. SAME—WITNESSES—STATEMENTS TO ATTORNEY—PRIVILEGE.
   Where, in an action to recover money alleged to have been loaned to defendants by plaintiff's assignor, defendant asked the latter, as a witness, on cross-examination, if, in a prior divorce proceeding in which she had made affidavit that she had no separate property, she had told her attorneys anything concerning the deposit sued for, and she replied that she told her attorney all of her possessions, such attorney was incompetent to testify to the communications made to him by plaintiff's assignor with reference to such proceeding for the purpose of contradicting such testimony.
   Van Brunt, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by Adolph G. Kaufman against George Rosenshine and another. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

B. F. Einstein, for appellants.
Frank M. Wells, for respondent.

PATTERSON, J. The plaintiff, as the assignee of one Nina Kaufman, sued the defendants, copartners, to recover a sum of money which he alleges his assignor left on deposit with them under an agreement that it should be paid back to her on demand;

with such profits as might have been earned upon that sum of money while it was used in the copartnership business. The allegations of the complaint in this regard were denied by the defendants. It appeared in evidence that Miss Kaufman, being about to marry one Max Rosenshine, a brother of the defendants, was presented with the sum of $2,000 as a wedding present. The gift was represented by a check or checks—it is immaterial which—and the fact is conclusively proven that the gift was to her. The checks were drawn by the defendants in their firm name. It is admitted that shortly after her marriage she delivered the check or checks to the defendants, and that serious discord had arisen between her and her husband. The question of fact in the case is the following: Under what agreement were the checks delivered to the defendants? The plaintiff's version is as above stated. The claim of the defendants is that the plaintiff's assignor surrendered the check or checks unconditionally, and that she did so in view of her relations with her husband; she being convinced that she ought not to retain the gift, it having been made to enable her to set up housekeeping with her husband in New York City.

The evidence relating to the issue of fact is very conflicting, and is unsatisfactory on both sides, but there was enough in the proofs made on behalf of the plaintiff to authorize the jury to find in his favor. Apart from other matters, it appears that negotiations were had for some time between the plaintiff's assignor and the defendants, or one of them, with respect to monetary relations between their brother Max Rosenshine and his wife. There was a sum of $5,500 which she received from or through them, and their contention is that that amount was agreed upon at an interview at which the plaintiff's assignor was present, and that it was then stated by a Dr. Frankenburg, who seems to have been a friend of all the parties, that that amount should be fixed in view of the fact, substantially, that the plaintiff's assignor had relinquished and returned to them the sum of $2,000; and one of the defendants swore that Dr. Frankenburg said, in the hearing of all the parties to the interview:

"Boys, you want to consider this $2,000 in the settlement which you make with this girl. The money was returned boys, and now knowing that this action was pending, I think you ought to consider this $2,000 in the cash settlement that you make with Nina Kaufman."

That statement was contradicted by the plaintiff's assignor, who testifies that no reference was made to the $2,000 at any meeting at which Dr. Frankenburg was present. If that conversation occurred as claimed by the defendants, and if Dr. Frankenburg made that statement, and the plaintiff acquiesced in it, strong evidence would be furnished of the truth of the defendants' claim. It is unfortunate that Dr. Frankenburg was not called as a witness. It appears that at the time of the trial he was living in the city of New York, and practicing his profession there. But there is some testimony in the record indicating that, in fixing the sum of $5,500 as the amount to be paid to Mrs. Max Rosenshine (Nina Kaufman), the item of $2,000 was not considered. The plaintiff, who is the

brother of his assignor, testifies that a larger amount had actually been agreed upon between himself and the defendants before the time of the alleged interview at which Dr. Frankenburg was present. On the whole testimony, we cannot say that the verdict should be disturbed as against the evidence.

It is urged by the defendants that the judgment should be reversed because of erroneous rulings of the trial justice. One of those rulings only requires consideration. In her action for divorce, the plaintiff's assignor stated in an affidavit which was presented to the court on a motion for alimony and counsel fee that she was without any means of support; that she had no separate property, and was dependent upon her relatives for her maintenance. It was contended by the defendants that, that statement in the affidavit being true, she could not have had $2,000 in the possession of the defendants. The fact of that affidavit having been made was brought out by the defendants on cross-examination of the plaintiff's assignor, and she was asked whether when it was drawn, or in contemplation of its preparation, she had told her attorneys anything concerning this $2,000 being on deposit with the defendants, and her answer was, "Yes; I told him all my possessions." One of the attorneys for the plaintiff's assignor in that action was called as a witness by the defendants for the evident purpose of contradicting the testimony just referred to, and he was not permitted to testify, on the ground that the communications made to him were privileged. That ruling we think was right. The testimony of an attorney as to communications made to him by his client is not admissible, whether they relate to a suit pending, or to any other matter requiring the professional assistance of the attorney or counsel. Williams v. Fitch, 18 N. Y. 547; Britton v. Lorenz, 45 N. Y. 57. It is not necessary to inquire into the reason of that rule, or to add anything to what is stated in the opinions of the court in the cases cited. If the plaintiff's assignor had herself, as part of the plaintiff's case, testified as to communications made by her to her counsel, another rule would prevail; but that was not done here, nor was her privilege in any way waived. What she testified to in this regard was brought out on cross-examination, and "to allow one party to extract from his adversary a conversation between the latter and his attorney, and then to call the attorney to contradict the client, would result in the grossest injustice. It would create an antagonism between the attorney and client, and in effect destroy the rule which treats such communications as privileged. No man would ever feel safe in consulting a lawyer if such a doctrine was one established by the courts." Tate v. Tate's Executor, 75 Va. 533.

None of the other exceptions requires special consideration, and the judgment and order appealed from must be affirmed, with costs.

O'BRIEN, HATCH, and LAUGHLIN, JJ., concur.

VAN BRUNT, P. J. I dissent. The exception to the exclusion of the question to the attorney for plaintiff is fatal. Where the

client has endeavored to shield herself from the effects of an affidavit inconsistent with evidence given upon the trial upon the ground that she had stated the facts to her attorney, I can see no reason why the attorney may not be called to prove that no such communication was made.