The People of the State of New York, Respondent, *v.* Saul Shapiro, Appellant.

Argued January 18, 1955; decided April 28, 1955.

*Nathan Kestnbaum* for appellant. I. The trial court committed numerous reversible errors of law, requiring a new trial. (*People* v. *Bonier,* 179 N. Y. 315; *People* v. *Marendi,* 213 N. Y. 600; *People* v. *Hetenyi,* 277 App. Div. 310.) II. Defendant's rights were invaded by questions, relating to privileged conversations between defendant and his attorney regarding Doris Davis, put to defendant over repeated objection and exception. (*Bloodgood* v. *Lynch,* 293 N. Y. 308.) III. The court, invading defendant's rights, had forced defendant to call a witness and she destroyed his defense. IV. Defendant, as was his privilege, endeavored to prove that he enjoyed a good reputation. Section 542 of the Code of Criminal Procedure may not be invoked to cause disregard of error on the issue. Among his character

witnesses, he called the president of the firm where defendant was employed. This character witness was subjected to a grossly unfair and protracted questioning by the court. (*People* v. *Van Gaasbeck,* 189 N. Y. 408; *People* v. *Trimarchi,* 231 N. Y. 263; *People* v. *Elliott,* 163 N. Y. 11.)   V. The conduct of the trial court was plainly calculated to and, in fact, did deprive defendant of a fair trial as a matter of law. (*People* v. *Viscio,* 241 App. Div. 499; *People* v. *Becker,* 210 N. Y. 274; *People* v. *Acardo,* 140 App. Div. 929; *People* v. *De Maio,* 243 N. Y. 588; *People* v. *Adler,* 274 App. Div. 820; *People* v. *Stephens,* 200 Misc. 701; *People* v. *Wolf,* 183 N. Y. 464.)   VI. Exhibits may be taken into the jury room only with the consent of defendant, and neither he nor his counsel should be asked in the presence of the jury whether they so consent. (*People* v. *Snyder,* 297 N. Y. 81.) VII. An order allegedly correcting the record to show that the jury had been excused was improper.

*Frank S. Hogan, District Attorney* (*Leonard E. Reisman* and *Richard G. Denzer* of counsel), for respondent.   I. Defendant's guilt was proved beyond a reasonable doubt. (*People* v. *Taddio,* 292 N. Y. 488; *People* v. *Willett,* 213 N. Y. 368; *People* v. *Place,* 157 N. Y. 584; *People* v. *Birnbaum,* 208 App. Div. 476.)   II. A defendant, having taken the stand as a witness, will be deemed to have waived any privilege he may have as to communications between himself and his attorneys.   In any event, the testimony in issue was of an inconsequential nature and the error, if any, was harmless. (*Shafer* v. *Utica Mut. Life Ins. Co.,* 248 App. Div. 279; *Chellis* v. *Chapman,* 125 N. Y. 214; *Bolt & Co.* v. *Gilmore,* 120 Misc. 116.)   III. A character witness may not testify as to his own opinion of the defendant's character, but is limited, rather, to his knowledge of the reputation he bears in the community.   Accordingly, since the witness' personal estimate is of no consequence, evidence as to his industrial or social eminence would appear to be irrelevant and properly excludable. (*People* v. *Fay,* 270 App. Div. 261, 296 N. Y. 510; *People* v. *Laudiero,* 192 N. Y. 304.)   IV. The declarations of a defendant's coconspirator or accomplice uttered in furtherance of the crime charged are admissible and binding upon the defendant so long as there is other evidence showing the existence of the conspiracy between the defendant and the declarant.

(*People* v. *Becker,* 215 N. Y. 126; *People* v. *McKane,* 143 N. Y. 455.)   V. The court's conduct of the trial was proper.   In the light of their background and of defense counsel's conduct as a whole, the court's comments were generally justified and cannot be stamped prejudicial.   VI. The Court of General Sessions had both jurisdiction and power to order the correction of its own inaccurate record.   (*Peterson* v. *Swan,* 119 N. Y. 662; *People* v. *Carrano,* 275 App. Div. 661; *People* v. *Schafer,* 267 App. Div. 751; *De Cicco* v. *Schweizer,* 176 App. Div. 679.)

DYE, J.   The defendant has appealed by permission of an Associate Judge of this court from the unanimous affirmance by the Appellate Division of a judgment of the Court of General Sessions of the County of New York, following a jury trial convicting him of two crimes of robbery in the first degree, the crime of attempted robbery, first degree (Penal Law, § 2124) and the crime of conspiracy (Penal Law, § 580).

The defendant had been jointly indicted with three others named Sidney Rudish, Peter Corso and Fred Herman, each of whom pleaded guilty and none of whom was called as a witness at the trial of the defendant.

On this appeal the defendant does not argue the sufficiency of the People's proof to sustain the jury verdict of guilt but confines himself to errors of law and asks that a new trial be granted.

At the trial the People adduced evidence showing that on Thursday evening, October 23, 1952, at about 9:30 P.M. Rudish, Corso and Herman entered an F. W. Woolworth store located near Fifth Avenue between 13th and 14th Streets, New York City, and at gun point held up two employees who were closing up for the night.   When their attempt to open a safe containing a $5,000 payroll failed, they robbed the two employees of $49 in cash and left the building to walk into the arms of waiting police.   Upon the arrest and disarming of the three named gunmen, other officers arrested the defendant as he sat behind the wheel of his car, double parked with motor running, in such a position that it could be driven away without any delay.   He was immediately returned to the scene, confronted with the three disarmed gunmen and before any one had accused him of anything protested his innocence and stated that he had

" never [seen] them in my life  *  *  *  I don't want to say no more  *  *  *  I want to get a lawyer ''. As a matter of fact he was well acquainted with them and the officers had seen them together a short time before. When the defendant took the witness stand in his own behalf, he was submitted to a searching and exhaustive cross-examination respecting his alleged claim that his presence at the scene of the crime was for the innocent purpose of keeping a date with a girl whose name, other than " Doris " and address he did not know and that they were to meet Corso and his girl for a double date.

Doris was not in the courtroom. Her whereabouts was unknown to the prosecutor and there was every reason to believe that the defense did not intend to call her as a witness. The prosecutor, in the course of defendant's cross-examination, sought to elicit information as to where Doris might be located. When this line of questioning was not productive, the prosecutor then sought to find out if at any time he had ever told anyone her address. When the defendant witness denied that he had, he was then asked a series of questions as to whether he had ever told his present or former attorney where Doris might be found or whether they had told him not to bother about getting in touch with her, or what he had said to either attorney and what the attorneys had said to him. Objections by defense counsel to this line of questioning were overruled and defendant was directed to answer, the court having ruled that: " Let me inform you that when you take the witness stand to testify, you are the same as any other witness. If you didn't want to take the witness stand, nobody could have compelled you to take the stand, but when you take the witness stand, then you answer all questions that are put to you; is that clear to you? "

Faced with the dilemma created by this line of questioning, the defense counsel asked the aid of the court and the prosecutor to assist in producing Doris Davis, whom a process server employed by the defense had just then located as a patient in a city hospital. The trial judge granted this. Doris corroborated the defendant's prior testimony that a date had been made for the evening in question, but contradicted his testimony as to the time of making it, the plan for a double date or that she had talked with him on the telephone. The defendant now claims that as a result of the ruling and the questioning he was forced

to call Doris as a witness; that in calling her his defenses were destroyed with the result that the defendant was prejudiced in a fundamental right before the jury and denied a fair trial.

It is fundamental in our jurisprudence that no person can be compelled in a criminal action to be a witness against himself (U. S. Const., 5th Amendt.; N. Y. Const., art. I, § 6; Code Crim. Pro., § 10). On the other hand, a defendant, if he chooses, may testify as a witness in his own behalf (Code Crim. Pro., § 393). When he does so voluntarily, he subjects himself to the same rules of examination controlling examination of any other witness (*People* v. *Tice,* 131 N. Y. 651), including all matters relative to the issue, even though injurious to his defenses (*People* v. *Trybus,* 219 N. Y. 18). In taking the stand a defendant witness is deemed to have waived as a necessary consequence of his election to testify the constitutional and statutory protection against self incrimination (*People* v. *Russo,* 251 App. Div. 176; *People* v. *Rosenheimer,* 209 N. Y. 115). The waiver thus approved as a basis for compelling testimony or the production of evidence on the substantive issue by a defendant witness so far as we can ascertain has not been approved as a waiver of the rules governing the competence and admission of evidence — particularly those fundamental rules pertaining to privileged communications. Such communications are zealously guarded (Civ. Prac. Act, §§ 353–354; *Matter of New York City Council* v. *Goldwater,* 284 N. Y. 296). Such privilege, however, may be waived by express consent which consent is also implied when a client witness voluntarily gives testimony respecting the privileged matter (*People* v. *Patrick,* 182 N. Y. 131).

Such statutes and decisional law express a long-standing public policy to encourage uninhibited communication between persons standing in a relation of confidence and trust, such as husband and wife (Civ. Prac. Act, § 349; *People* v. *Daghita,* 299 N. Y. 194); confessor and clergyman, or doctor and patient (Civ. Prac. Act, §§ 351–352; 5 Chamberlayne on Evidence, § 3696; *Woernley* v. *Electromatic Typewriters,* 271 N. Y. 229); attorney and client (Civ. Prac. Act, § 353; *People* v. *Patrick, supra*). In carrying out such policy the statutes are accorded a broad and liberal construction (*Buffalo Loan, Trust & Safe*

*Deposit Co.* v. *Knights Templar & Masonic Mut. Aid Assn.,* 126 N. Y. 450, followed in *Matter of New York City Council* v. *Goldwater, supra*). To say that the broad protection of such policy is not available to a defendant when he takes the stand in a criminal case would entail consequences far more detrimental to the interests of society than does rejection of the evidence that might be disclosed. When the client, especially one accused of crimes, asks for advice and guidance in the premises, he should be able to speak freely without any fear and in full confidence that what is said by him or to him by his attorney will not be subsequently subject to disclosure if he takes the witness stand during the trial of his case. Any other policy than strict inviolability, unless expressly waived, would seriously hamper the administration of justice, for the client would perhaps refrain from telling the truth or withhold the truth, while the lawyer would be reluctant to give the correct advice and counsel if he thought it would be subject to disclosure in the event his client took the stand to testify in his own behalf. It is for these and other reasons that the rule against disclosure is of such importance and that it may not be waived except as the statute provides with " the express consent " of the client (cf. *Matter of People* v. *Cravath,* 58 Misc. 154). The privilege of nondisclosure belongs to the client alone (*Svenson* v. *Svenson,* 178 N. Y. 54) and disclosure should not be compelled when a client's liberty is at stake in a criminal trial.

We believe that it was wrong to permit interrogation of this defendant witness on what took place between him and his attorneys. He did not expressly consent to waive the privilege of confidence but in fact protested vigorously and asserted alleged constitutional protection. His lawyer, as we have seen, objected to no avail. Consent to waive applicable evidentiary disabilities may not be implied from the circumstance that he took the stand in his own behalf.

Our attention has not been called to any New York cases holding that a privileged communication is waived when a person takes the stand in a criminal case. In logic and reason a distinction should be made between the waiver deemed to have been made when the defendant witness is interrogated on the issue of his guilt and the rules of evidence relating to privileged

communications between himself and his attorney, the disclosure of which would serve to assure the prosecutor a verdict of guilt (cf. 8 Wigmore on Evidence, § 2327; 3 Wharton's Criminal Evidence [11th ed.], § 1117, p. 1951).

We are mindful of the general rule applying to criminal trials that " it can never be necessary to add anything to the plain and simple language of the statute " (*People* v. *Fitzgerald,* 156 N. Y. 253, 266). The statutes against nondisclosure are couched in clear and simple language. The substantiality of the court's error is not overcome nor may it be excused, because the answers ultimately given to the objectionable line of questioning were either categorically in the negative or " I don't know " or at most, were harmless, because defense counsel was asking to subpœna Doris and finally, with the aid of the court, produced her as a defense witness. The fact of the matter is that her testimony demolished the defense regardless of whether or not the jury would have accepted it as a defense. In such light it is not clear on what grounds it can reasonably be said that such error is insubstantial and had no effect on the minds of the jurors. Once the seal attending the disclosure of privileged communications has been broken, it cannot very well be restored. This is too fundamental to be overlooked (Code Crim. Pro., § 542). The important thing in the trial of a criminal case is to accord defendant a fair trial. (*People* v. *Marendi,* 213 N. Y. 600.)

The remaining assigned errors need not detain us since they have to do with matters pertaining to the conduct of the trial.

The judgment of the Appellate Division and that of the Court of General Sessions should be reversed and a new trial ordered.

FULD, FROESSEL, VAN VOORHIS and BURKE, JJ., concur; CONWAY, Ch. J., and DESMOND, J., dissent and vote to affirm upon the ground that whether or not there was a waiver of the privilege of the attorney and client relation, the claimed error on this record was not prejudicial to defendant.

Judgments reversed, etc.