**Gary James COLLINS, Petitioner,**

v.

**Calvin AUGER, Warden, Respondent.**

**Civ. No. 76–215–1.**

United States District Court,
S. D. Iowa, C. D.

March 30, 1977.

Keith E. Uhl, Scalise, Scism, Gentry, Brick & Brick, Des Moines, Iowa, for petitioner.

Thomas D. McGrane, Asst. Atty. Gen., Richard C. Turner, Atty. Gen. of Iowa, Des Moines, Iowa, for respondent.

## MEMORANDUM OPINION AND ORDER

STUART, District Judge.

The matter before the Court concerns the application of state prisoner, Gary Collins, for habeas corpus relief pursuant to 28 U.S.C. § 2254. On July 18, 1974 petitioner was convicted by a jury of assault with intent to commit rape in violation of section 698.4 of the Iowa Code (1973). On appeal to the Supreme Court of Iowa the conviction was affirmed. *State v. Collins*, 236 N.W.2d 376 (Iowa, 1975). A petition for certiorari was filed with the United States Supreme Court but subsequently denied. See *Collins v. Iowa*, 426 U.S. 948, 96 S.Ct. 3166, 49 L.Ed.2d 1184 (1976). Although petitioner has made no application for post conviction relief the Court believes and the State concedes that he has adequately exhausted his state remedies as is required under 28 U.S.C. § 2254. Petitioner presents in this Court the same issue that was presented to the trial court in the form of motions and objections, to the Iowa Supreme Court on Appeal, and in the petition for certiorari. See *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *Coney v. Wyrick*, 532 F.2d 94, 99–100 (8th Cir., 1976); *Rice v. Wolff*, 513 F.2d 1280 (8th Cir., 1975), reversed on other grounds (filed July 6, 1976), 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067.

Petitioner was arrested in January of 1974 and subsequently indicted by County Attorney Information on January 28, 1974. On January 31, 1974 petitioner filed an application for a mental evaluation regarding both competency to stand trial and possible medical treatment. Pursuant to Court Order on February 20, 1974 petitioner was admitted for psychiatric evaluation at the Iowa Security Medical Facility at Oakdale and remained in such institution, under examination, until May of 1974. During this period petitioner was interviewed, apparently with some degree of frequency, by Dr. Rumullo Lara. In the course of these interviews approximately seven hours were devoted to eliciting and developing background information. Four to five days after his initial admittance petitioner began receiving prescription tranquilizers because of his nervous state.

During the course of Dr. Lara's questioning certain facts were elicited dealing with both petitioner's knowledge of the contents of the County Attorney's Information and his own version of the factual background of the alleged offense for which he was in custody. It is conceded by respondent that no "formal" *Miranda* warnings were given during any part of the questioning. Dr. Lara, over numerous objections, testified in the State's case in chief as follows:

Q. Could you relate to us the, doctor, your conversations with Gary as to what his opinion was as to the fact which occurred on January 6, 1974?

A. I need clarification if I may, when you say what his opinion was.

Q. What did he relate to you happened on January 6th that occasioned him to be taken into custody?

A. I'll quote from the history.

MR. KROHN: This is objected to again as hearsay.

THE COURT: Overruled.

A. This is a quote from the psychiatric history. 'Since November, 1973, he had been employed in Iowa working for Confinement Construction Company. He shared a room with a co-employee in Lambs Grove, and

this friend would drive him to work. Since his birthday was nearing, he decided to take off from work for three days between January 4 and January 6, finding lodging in the Churchill Hotel in Newton, and he had been drinking in that town, and after returning to Lambs Grove that particular evening, January 6th, he had been hitchhiking along Highway 6 at about ten p. m., and caught sight of a home which is three units housing different families. Feeling quite cold, he had approached this residence going up the stairs and knocking on the door. The victim accommodated him and he had requested to use her telephone so he could call his friend "Deano" to fetch him. His friend, however, was unavailable. Mrs. Andrews, in the meantime, had served him a cup of coffee and peanut butter sandwich. He introduced himself and told her where he was employed. It was then that he asked, "What do you think of rape?" She was startled and seemed panic-stricken. She responded, "I think you have overstayed your welcome", and had opened the door for him to leave. This angered him and he had bolted the door shut. He threw her in bed and remarked, "I'm going to ball you", and she began screaming and he slapped her. She bit his little finger drawing blood. This further angered him and he beat her and stripped off her clothing. He says that at that time he was both angry and lustful willing to get his pleasures from anyone available. No rape was completed, however, saying that when he had stripped her it was sickening to see. Feeling afraid of himself, he ran away by the backyard.

\* \* \* \* \* \*

Q. With the investigations, tests, and observations you've told us about with regard to Mr. Collins, also were you present in the Courtroom when Mrs. Andrews testified?

A. I was.

Q. Did you hear her testify in full as to what occurred in her opinion at her apartment on the night in question?

A. For the most part, yes. Her voice tended to falter a little bit.

Q. Are the facts which you heard from Mrs. Andrews the same facts which you were advised by my office and the same facts upon which you particularly based your conclusion? Specifically I'm referring to the telephone cord having been ripped out, the conversation that took place between she and Mr. Collins, these areas?

A. That is correct.

The record is also clear that petitioner did voluntarily disclose to Dr. Lara the facts surrounding the alleged offense.

Q. Did you at any time assure him that the statements that he made about these events on the 6th day of January would not be repeated?

A. No. As a matter of fact he wanted it divulged at that time.

Petitioner urges that his current twenty year period of incarceration is unlawful in that the conviction was obtained in violation of his Fifth, Sixth and Fourteenth Amendment rights because: (1) He was not given proper *"Miranda"* warnings prior to the questioning by the state psychiatrist during the course of the psychiatric evaluation; and (2) His incriminating statements made to the psychiatrist during the course of his psychiatric examination were introduced by the state in his trial to prove his guilt.

### Miranda

■ The Court agrees with Iowa Supreme Court that the prophylactic rules of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny should not be extended to encompass the kind of situation involved herein. *State v. Collins,* supra, 236 N.W.2d at 378. The giving of the *Miranda* warnings prior to a

psychiatric examination would be highly inappropriate. The full and free disclosure of information and the patient's thinking processes, so essential to a meaningful psychiatric examination, would be frustrated if the patient were advised of his right to counsel and his right to remain silent and informed that his statements could be used against him in a criminal trial to prove his guilt. The importance of psychiatric testimony in resolving the issues of defendant's sanity at the time of the offense or his ability to aid in his own defense has been firmly established. The defendant should not be placed in the position of either refusing to give full cooperation to the psychiatrist or waiving his objection to the introduction of incriminating admissions. The Court concludes that the manner in which the statements were elicited were thoroughly proper. This does not, however, preclude consideration of the impact of the *use* of those statements at trial.

### Fundamental Fairness

The majority opinion in Collins' appeal to the Supreme Court of Iowa, *State v. Collins,* supra, limited the court's decision to the inapplicability of *Miranda,* which was the sole issue raised in defendant's assignment of error, stating the issue as follows:

> [W]hether statements made by a defendant to a state psychiatrist examining him pursuant to a court order entered upon the defendant's application are admissible against the defendant at trial when the statements were made without prior *Miranda* warnings to the defendant by the psychiatrist.

*Id.* at 378.

The question of fundamental fairness under the Fourteenth Amendment to the United States Constitution was not discussed in the majority opinion. However, Justice Rawlings in his special concurrence expressed deep concern about the effect of the introduction into evidence of self incriminating statements elicited during a psychiatric examination. He thoroughly discussed the problems including that of fundamental fairness and analyzed the

cases. The fact that the Iowa Supreme Court was thus alerted to the issue, but did not consider it, is further support for the court's position that all practical state remedies have been exhausted.

■ It is well established that a mere evidentiary error committed in the course of a state criminal trial will not constitute such a fundamental deprivation of the guarantees of a fair trial as to rise to a deprivation of due process of law. But varying with the circumstances, errors which operate to affect the jury's consideration of the evidence presented may be so egregious as to deprive a defendant of a fair trial. Where criminal trials in state courts are conducted in such manner so as to disregard that fundamental fairness essential to the very concept of justice, due process is offended and federal court intervention is warranted. "The aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence whether true or false." *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941).

■ In this Court's opinion, it is fundamentally unfair to use defendant's incriminating admissions to a psychiatrist during a psychiatric examination as part of the prosecution's case to establish his guilt. It is immaterial in this regard whether the court ordered examination was at the request of defendant or the prosecution or whether it was to determine his capacity to aid in his own defense or his mental condition at the time of the crime. The fundamental unfairness of the introduction of such evidence violates defendant's right to due process under the Fourteenth Amendment to the Constitution of the United States.

■ The defendant is entitled to raise his mental condition at the time of the offense as a defense. He is also entitled, under proper circumstances, to an examination to determine his competency to stand trial. Psychiatric examinations are essential to the proof of his mental condition. An indigent must seek a court order authorizing

the examination and the payment of its cost. If the giving of a *Miranda* warning satisfied requirements of the Fifth Amendment and the Fourteenth Amendment and made the defendant's incriminating admissions admissible, the defendant would be placed in a situation where he must sacrifice one Constitutional right to claim another.

If a defendant cooperated with the psychiatrist and made a full disclosure of his thinking processes and his background, including incriminating statements and if he failed to establish his lack of mental capacity, he would be faced with these admissions on trial. If a defendant exercised his right to remain silent and refused to cooperate with the psychiatrist the likelihood of a meaningful and reliable examination would be considerably decreased and his opportunity to urge a possible defense thwarted. A defendant should not be compelled to choose between exercising his Fifth Amendment right not to incriminate himself and his due process right to seek out available defenses.

The situation is analogous to the attempt to use defendant's testimony at a suppression hearing in a trial to determine guilt. In *Simmons v. U. S.,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court said:

> Thus, * * * Garett was obliged either to give up what he believed * * * to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.

Congress solved this problem for federal courts in psychiatric examinations to determine a defendant's mental capacity to stand trial by providing:

> No statement made by the accused in the course of any examination into his sanity or mental competency provided for in this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding.

18 U.S.C. § 4244.

In *U. S. v. Albright,* 388 F.2d 719, 725 (4th Cir., 1968), a similar restriction was imposed upon disclosures made by a defendant during the course of a court ordered mental examination to determine his criminal responsibility for the act. Many courts have held that admissions made under similar circumstances are not admissible on the question of guilt. *U. S. v. Reifsteck,* 535 F.2d 1030, 1034 (8th Cir., 1976); *U. S. v. Alvarez,* 519 F.2d 1036, 1042 (3rd Cir., 1975); *U. S. ex rel. Smith v. Yeager,* 451 F.2d 164, 165 (3rd Cir., 1971); *U. S. v. Bohle,* 445 F.2d 54, 66–67 (7th Cir., 1971); *State v. Evans,* 104 Ariz. 434, 454 P.2d 976, 978 (1969); *People v. Stevens,* 386 Mich. 579, 194 N.W.2d 370, 371–373 (1971); *People v. Martin,* 26 Mich.App. 467, 182 N.W.2d 741, 743; *Williamson v. State,* Miss., 330 So.2d 272, 275 (1976); *State v. Obstein,* 52 N.J. 516, 247 A.2d 5, 11–12 (1968); *State v. Whitlow,* 45 N.J. 3, 210 A.2d 763, 770 (1965); *Lee v. County Court of Erie County,* 27 N.Y.2d 432, 318 N.Y.S.2d 705, 267 N.E.2d 452, 457; *People v. McKinney,* 62 Misc.2d 957, 310 N.Y.S.2d 518, 520 (1970).

Some courts have indicated they would exclude psychiatrist's testimony regarding admissions made to him by defendant during the course of a psychiatric examination as a violation of defendant's privilege against self incrimination. *U. S. v. Reifsteck,* supra, 535 F.2d at 1034; *U. S. v. Alvarez,* supra, 519 F.2d at 1042; *U. S. ex rel. Smith v. Yeager,* supra, 451 F.2d at 165; *U. S. v. Albright,* supra, 388 F.2d at 726. There is merit in this position if it is based on involuntariness rather than the failure to give *Miranda* warnings. Statements to a psychiatrist, which appear to have been made willingly and without coercion, should not be considered as voluntary under the

"totality of circumstances" test stated in *Greenwald v. Wisconsin,* 390 U.S. 519, 520–521, 88 S.Ct. 1152, 20 L.Ed.2d 77. Psychiatrists are trained to create an atmosphere that is conducive to full and free disclosure of whatever is on the patient's mind. The psychiatrist attempts to lull the defendant into divulging all information which might be helpful in determining his mental condition whether incriminating or not. *Stultz v. State,* Tex.Cr.App., 500 S.W.2d 853, 854–855 (1973). The examination is intimate, personal and highly subjective. *In re Spencer,* 63 Cal.2d 400, 46 Cal.Rptr. 753, 406 P.2d 33, 40.

Even though Collins' statements were not made in response to questions and he apparently felt he wanted to talk about the incident, there was "[N]o suggestion that he intended to make a confession which would incriminate him with the authorities or that he was aware his course of action would be the cause of his conviction in court". *U. S. v. Robinson,* 142 U.S.App.D.C. 43, 50, 439 F.2d 553, 560 (1970).

The object of the privilege against self incrimination is to:

> [I]nsure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime. The privilege is limited to criminal matters, but it is as broad as the mischief against which it seeks to guard.

*Counselman v. Hitchcock,* 142 U.S. 547, 562, 12 S.Ct. 195, 198, 35 L.Ed. 1110 (1892). See also *Maness v. Meyers,* 419 U.S. 449, 461, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975).

■ Surely the mischief against which the Fifth Amendment seeks to guard can best be avoided under the circumstances here, not by advising defendant of his right to remain silent, but by permitting him to talk freely with the psychiatrist without running the risk that any incriminating statements can be used against him on the issue of his guilt. Any waiver of his rights suggested by such free disclosure should be limited to issues regarding his mental condition. This is not to suggest that the court believes instructions limiting the purposes for which incriminating statements could be considered would satisfy the requirement of fundamental fairness. A separate hearing might be called for.

■ In addition to the due process and self incrimination issues, there are strong equal protection arguments which could be urged in the instant situation. If a criminal defendant could afford a private psychiatric examination, the physician-patient relationship might foreclose the disclosure of incriminating statements made during the course of the examination. See *State v. Evans,* 104 Ariz. 434, 454 P.2d 976, 978 (1969); *City & County of San Francisco v. Superior Court,* 37 Cal.2d 227, 231 P.2d 26. Such relationship is not created when a psychiatrist examines an indigent defendant under court appointment. *In re Spencer,* supra, 63 Cal.2d at 410, 46 Cal.Rptr. at 760, 406 P.2d at 40. The Court reaches no decision on this point here.

■ Notwithstanding the court's strong feeling that the admission of the psychiatrist's testimony was not consistent with the principles of fundamental fairness and consequently denied Collins due process, the court is reluctant to require a new trial. There was ample evidence to sustain a conviction without these admissions. But, I cannot say that the admission of statements of defendant confirming in detail the testimony of the victim was harmless error.

IT IS ORDERED that the petition for writ of habeas corpus is sustained on the condition that the writ for petitioner's release shall not issue if the state within ninety (90) days from the filing hereof takes the initial steps necessary to retry Gary James Collins.

IT IS FURTHER ORDERED that in the event the State of Iowa files a timely appeal from this Memorandum Opinion and Order, the issuance of the writ shall be stayed pending the outcome of such appeal.