■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES FINN, Appellant.—Judgment, Supreme Court, New York County, rendered June 21, 1976, convicting defendant, after a jury trial, of two counts of robbery in the first degree and sentencing him to concurrent terms of imprisonment of from 10 to 20 years on each count, reversed, on the law and as a matter of discretion in the interest of justice, and case remanded for a new trial. A defendant waives the privilege against self incrimination when he interposes an insanity defense. However, a defendant's waiver of this privilege because of his plea of insanity only permits the psychiatrist to testify as to the facts which formulate the basis of his medical opinion on the question of sanity. The psychiatric testimony may not be considered on the issue of guilt. The foregoing principles control whether it be the prosecution or the defendant who requests the psychiatric examination *(Matter of Lee v County Ct. of Erie County,* 27 NY2d 432, 440-442, cert den 404 US 823). Thus, it is fundamentally unfair to use a defendant's incriminatory statements to a psychiatrist as part of a prosecution's case to establish a defendant's guilt *(Collins v Auger,* 428 F Supp 1079; see *People v Crimmins,* 36 NY2d 230, 237-238). Even in the absence of timely protest, as in this proceeding, this court will reverse and order a new trial where a defendant has been deprived of his fundamental right to a fair trial. *(People v McLucas,* 15 NY2d 167, 172; CPL 470.15, subd 3, par [c]; 470.15, subd 6, par [a].) At trial, defendant raised the defense of insanity. A psychiatrist, Dr. Train, examined the defendant at his own request. The psychiatrist, called by the prosecution on rebuttal, testified as to the incriminating statements made by the defendant with regard to two of the three robberies covered by the consolidated indictment. Although defense counsel did not object, it was incumbent upon the trial court to give cautionary instructions as to the use of the psychiatrist's testimony. As was mentioned above, his testimony could be considered on the issue of sanity but not that of guilt. This basic error was compounded when the prosecutor, in his summation, referred to "the defendant's admission to the doctor on these particular points [i.e., linking him with the robberies]". The error was perpetuated as a result of the trial court's failure to give any charge with regard to the proper use of the psychiatric testimony. This mistake was further exacerbated when the trial court, answering one of the jury's questions during deliberation, stated "the testimony of defendant's admissions to Dr. Train *of robbing the people*". Again, despite the failure of defense counsel to raise objections or to make a request to charge, this court can not ignore these fundamental errors. There can be little doubt that, in the absence of warning instructions, the jurors improperly treated defendant's "admissions" as evidence in chief on the issue of guilt. The trial court, in each of the foregoing instances, should have made it clear to the jury that defendant's incriminating statements to his psychiatrist were not evidentiary "admissions" on the issue of guilt. (Richardson, Evidence [10th ed], § 209 *et seq.)* The trial court should have emphasized that the incriminating statements were only being admitted to show the basis for the psychiatrist's medical opinion *(Matter of Lee v County Ct. of Erie County,* 27 NY2d 432, *supra;* CPL 60.55). Concur— Murphy, P. J., Birns and Sullivan, JJ.; Lupiano and Silverman, JJ., dissent in a memorandum by Silverman, J., as follows: I would affirm the judgment appealed from. We start with the fact that as there was a defense of insanity, the testimony of the psychiatrist was concededly admissible. What

are claimed to be errors are the comment by the prosecutor in summation mentioning admissions of the crime by the defendant, the use by the Judge of the word "admissions" in answering a question from the jury, and the failure of the court to give limiting instructions with respect to these admissions. My reasons for affirmance are these: (1) No objection or request was made by defendant as to any of these claimed errors. Further, at the end of the Judge's charge, defendant's attorney explicitly stated that he had no exceptions and no requests (other than that the jury could take all the exhibits). And the criticized use by the Judge of the word "admissions" came in the course of answering notes from the jury; at the end of the answer, which included instructions as to the definition of robbery, etc., the defendant's attorney stated "I find your instructions satisfactory." Perhaps the attorney was referring only to the instructions as to the definition of robbery, etc. But he surely was not objecting to the court's use of the word "admissions", or requesting limiting instructions. In the absence of objection or request, our power to review the claimed errors is to be exercised only "As a matter of discretion in the interest of justice" (CPL 470.15, subd 3, par [c]). We should "decline to exercise that power on the present record where the proof overwhelmingly established the guilt of defendant of the crime for which he was convicted" (*People v Jones*, 32 AD2d 1069, 1070). The integrity of the trial process and the needs of our overburdened criminal justice system require us not to order new trials for alleged errors which nobody at the trial thought were erroneous but which are afterthoughts in the appellate process. (2) We are not dealing with the admissibility of the statements made by defendant to his psychiatrist. Concededly that evidence was admissible at least on the issue of mental capacity. We are dealing rather with the reference by the prosecutor in summation to these statements as admissions of guilt, and the Judge's use of the word "admissions", to which I have referred. Thus the jury, in any event, heard and was entitled to hear the evidence of the defendant's statements to the psychiatrist that he had committed the crimes. And defendant's attorney cross-examined the psychiatrist about these statements so that they again were called to the jury's attention. As to the Judge's remarks in using the word "admissions", he was not himself characterizing the evidence. He was merely following the usual practice of Trial Judges in giving an answer to a jury's question, to precede the answer by some identification of the question, usually by reading the question. That is what the Judge did here; he was reading the jury's question almost verbatim, including the use of the jury's word "admission" in the course of its question. And the prosecutor's statement in summation, while addressed to the issue of guilt, was a passing reference (in the course of a 700-page record) to the effect that the defense was not pushing the issue of identification all too strongly "after all, what are you going to do with the defendant's admission to the doctor on these particular points." (3) In fact, the jury exercised considerable discrimination. Of the two crimes here involved which the defendant told his psychiatrist he had committed, the jury convicted on one and disagreed on the other. On the robbery of which he was convicted and of which he spoke to the psychiatrist, the proof was quite overwhelming including the defendant being caught in hot pursuit, immediately identified, with unusual appearance and distinctive garments and a T-shirt with a distinctive legend on it, and having in his possession in a separate pocket not in his wallet the exact sum stolen from the victim, and with an admission to the police officer—all this without regard to the statement to the psychiatrist. (4) One of the robberies of which the defendant was convicted was in no way involved in the statements of the psychia-

trist and it is difficult to see how that conviction would be affected by the statements to the psychiatrist admitting to other crimes involved in the trial, crimes as to which evidence was inevitably received as they were charged in the indictment. (5) There was no error. It is a basic principle of the law of evidence that all relevant evidence is admissible, except where excluded by some specific rule (cf. Fed. Rules, Evidence, rule 402 [in US Code, tit 28, Appendix]; Thayer, Preliminary Treatise on Evidence, p 265 [1898]: "unless excluded by some rule or principle of law, all that is logically probative is admissible"). If the statements here involved were excludable, it must be for a violation of either the privilege against self incrimination, the physician-patient privilege or the attorney-client privilege. (a) As to the privilege against self incrimination, the case is to be distinguished from testimony by a psychiatrist as to a court-ordered examination as was involved in *Matter of Lee v County Ct. of Erie County* (27 NY2d 432) and *Collins v Auger* (428 F Supp 1079). It can be argued that what a defendant tells a psychiatrist in an examination ordered by the court is protected by the privilege against self incrimination. But the privilege has no applicability where the defendant privately retains a psychiatrist and talks to that psychiatrist. In such case there has been no compulsory self incrimination. "Indeed, since the defendant himself had requested the mental examination, he may not complain that his privilege against self incrimination or his right to counsel was violated." *(People v Di Piazza,* 24 NY2d 342, 352.) (b) As to the physician-patient and attorney-client privileges: (i) Assuming that they are applicable at all to the case of communications to this nontreating physician, those privileges are waivable. As to the conversation with the psychiatrist the privilege is waived by the defense of lack of mental capacity. *(People v Edney,* 39 NY2d 620.) Further, a very usual way of waiving the privileges is by failure to object. *(Strader v Collins,* 280 App Div 582; Fisch, New York Evidence [2d ed], §§ 530, 553.) (ii) Again, these privileges are privileges of confidentiality. But once the communications to the psychiatrist are properly testified to in court before the jury, as here they were, the confidentiality simply no longer exists. (c) I do not see any violation of due process here. Due process in this context can mean either of two things: (i) It can mean a violation of one of those portions of the first 10 amendments to the United States Constitution, made applicable to the States by the due process clause of the Fourteenth Amendment. If so, we are back simply to the privilege against self incrimination which we have discussed. (ii) Surely we do not have here a deprivation of due process in its most fundamental sense, the protection of "fundamental rights and immutable principles of justice"; "that fundamental fairness essential to the very concept of justice." (Cf. *People v Isaacson,* 44 NY2d 511, 520.) In this respect I must disagree with the statement of the District Court in *Collins v Auger* (428 F Supp 1079, 1082, *supra),* although that case involved a court-ordered examination.