OPINION OF THE COURT
Meyer, J.
A defendant who testifies in support of his justification defense that stab wounds on his body were inflicted by the decedent for whose murder he is being tried does not thereby waive the psychologist-client privilege established by CPLR 4507. It was, therefore, error, requiring reversal and a new trial, to permit the hospital psychologist, who interviewed defendant in order to determine whether he was suicidal, to testify, over defendant’s objection and claim of privilege, that defendant had stated to him that his stab wounds were self-inflicted.
I
Indicted for murder in the second degree and manslaughter in the first degree based upon the death on May 16,1982 of Gloria Diamond, defendant was convicted, after a jury trial, of manslaughter in the first degree. At the time of trial defendant was 26 years old. At the time of her death Gloria Diamond was 16 years of age. She and defendant had lived together, in an apartment which they rented, for approximately seven months until she left about a month before her death and went to live with her mother. There was evidence that defendant was troubled by her dating a new boyfriend and had told Gloria’s sister that if he could not have her no one would.
On the evening of May 16th Gloria returned to the apartment at about 8:00 p.m., ostensibly to return the keys and some money defendant had sent her. They were together that evening for several hours during which, according to defendant, they had sexual relations, but then got into an argument which culminated in Gloria attacking him with two knives, cutting his left wrist with one and stabbing him in the stomach with the other. Apart from pushing her away, defendant had no recollection of what followed. The cause of Gloria’s death, according to the medical examiner, was strangulation.
Between the time of the events in the apartment and midnight, defendant made several attempts to kill himself, by drinking ammonia, by driving his pickup truck at high speed into a viaduct, and finally by jumping in front of a car on the highway. While in an ambulance being given emergency treatment for his injuries, defendant asked to speak to Joseph Peptis, an off-duty State trooper who did not know defendant but whom defendant apparently recognized, and twice stated to him that, *175 “I just killed my girlfriend.” Given the address of defendant’s apartment, Peptis proceeded there and found Gloria Diamond’s body in the kitchen. After the body was checked for signs of life and the apartment secured. Trooper Peptis proceeded to the hospital where with Senior Investigator McElligott he interviewed defendant, advising him of his rights. Defendant responded, “You have your man, you have your corpus delicti, now you figure it out.” Defendant then requested an attorney and was advised that he was under arrest for murder, second degree.
At the suppression hearing Trooper Peptis testified that the hospital interview occurred at 12:58 a.m. on May 17th. Two other State Police Investigators, Stephen Bernardi and Wayne Burrell, testified at the suppression hearing that they interviewed defendant at the hospital at 1:53 a.m. on May 17th and advised him of his rights, and that defendant stated that he was willing to talk without an attorney. Defendant then told them that he had tried to kill himself by stabbing himself and refused to talk further after saying that you have the corpus delicti, you have your man; the only thing you want from me is motive. According to Bernardi and Burrell no one else was present during their interview.
The suppression Judge held the statements to Peptis at the accident scene spontaneous and that ruling is not an issue on this appeal. Without differentiating the hospital statement to Bernardi and Burrell from that to Peptis and McElligott, or fixing the times of the several interviews, he held that defendant’s original request to say nothing further was honored and that, in light of the time elapsed and the renewed warnings given, the hospital statements were admissible.
At the hospital defendant was also interviewed by Dr. K. C. Sharma, a licensed clinical psychologist, to determine whether he was suicidal, and during that interview as well, he stated that his stab wounds were self-inflicted. Defendant having testified in his own defense to Gloria’s attack on him, as above recounted, with two knives, the People were permitted, over defendant’s objection, to present in rebuttal Dr. Sharma’s testimony concerning defendant’s statements that he had stabbed himself.
The Appellate Division affirmed, by a divided court, the majority holding that the psychologist-client privilege is no broader than the doctor-patient privilege and that defendant should not be permitted to absolve himself and at the same time assert privilege in order to prevent ascertainment of the truth of his claim. With respect to the statements to Investigators Ber *176 nardi and Burrell, the entire court agreed that they had been made after defendant, during his second statement to Peptis, invoked his right to counsel and therefore should have been suppressed, but the majority held the error harmless beyond a reasonable doubt in light of defendant’s earlier admissions to Peptis and to Dr. Sharma, and the medical evidence that Gloria had been strangled and that defendant’s wounds were “hesitation” wounds (that is, self-inflicted by someone lacking the will to end his life).
The matter is before us by leave of one of the dissenting Justices at the Appellate Division. Defendant raises a number of points, none of which merit discussion except those relating to the testimony of Dr. Sharma and of Investigators Bernardi and Burrell. We conclude that it was error to admit the testimony of Dr. Sharma. We, therefore, reverse and remit for a new trial, noting that at the new trial the statements to Investigators Bernardi and Burrell, which should have been suppressed at the first trial, will not be admissible.
II
CPLR 4504, made applicable to criminal cases by CPL 60.10, proscribes disclosure by “a person authorized to practice medicine * * * [of] any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.” Dr. Sharma testified that he saw defendant in the intensive care unit at the request of the hospital physician in order to give the physician his opinion concerning whether defendant was suicidal and that there was a relationship of confidence between him and defendant. There can be no question, therefore, that defendant’s statements to Dr. Sharma that the wounds of his wrist and abdomen were self-inflicted, had they been made to a physician, would be privileged within the meaning of CPLR 4504. It has, however, long been the rule that when a patient puts in issue the condition for which he was examined by a physician he waives the privilege to the extent of permitting the physician to testify as to the facts upon which his opinion is based, but not on matters unrelated to the opinion concerning defendant’s guilt of a crime (People v Edney, 39 NY2d 620; People v Al-Kanani, 33 NY2d 260, 264; Matter of Lee v County Ct., 27 NY2d 432, 441; People v Carfora, 25 NY2d 972; People v Finn, 64 AD2d 526; see, People v Smith, 59 NY2d 156, 164; Koump v Smith, 25 NY2d 287; Hethier v Johns, 233 NY 370; Capron v Douglass, 193 NY 11).
The reasons usually given for the latter rule are that by putting his or her condition in issue the defendant has made *177 public what the statute was intended to protect and thus obviated the need for further confidence, and that it is unreasonable and unjust to permit a party to testify to whatever he pleases as to a given condition and at the same time prevent the opponent from contradicting the testimony (e.g., People v Bloom, 193 NY 1, 10; Capron v Douglass, 193 NY 11, 17, supra; see, Chafee, Privileged Communications: Is Justice Served or Obstructed by Closing the Doctor’s Mouth on the Witness Stand, 52 Yale LJ 607, 610).
In most cases the admissibility or inadmissibility of a physician’s testimony will be clear. Thus, in People v Ricco (56 NY2d 320, 327), a defense of insanity was held not to permit the use of a statement obtained in violation of defendant’s right to counsel as the basis for expression by a psychiatrist of an opinion that defendant was malingering rather than delusional, and in People v Finn (supra), such a defense was held not to permit a psychiatrist to testify concerning incriminating statements made to him by defendant, but in the Edney, Al-Kanani and Lee cases an insanity defense was held to permit testimony concerning defendant’s mental condition by a psychiatrist who had examined him at the request of his attorney or as part of the procedure relating to competence established by CPL article 730.
The defense involved need not, however, be one formally established by the Penal Law. The introduction by a defendant through several witnesses of testimony that at the time of the robbery with which he was charged and at a time two weeks later when complainant claimed to have seen him at Roosevelt Raceway he was unable to walk without crutches because of an ankle injury was held, in People v Carfora (25 NY2d 972, supra), to permit the prosecution to present in rebuttal the testimony of physicians who examined him prior to the robbery, as to the condition of his ankle at the time of examination and the time it would take for the ankle to heal. Likewise, in State v Soney (177 NJ Super 47,424 A2d 1182, cert denied 87 NJ 313,434 A2d 67), the testimony of an epileptic charged with vehicular homicide that he had taken the required medication after breakfast on the day of the accident was held a waiver of privilege permitting the doctor who treated defendant at the hospital immediately following the accident to testify that defendant admitted that he had run out of his medication and had not taken it for three days prior to the accident.
Dr. Sharma interviewed defendant in order to determine whether he was suicidal. Although by testifying that Gloria had *178 stabbed him in the wrist and stomach defendant did not put directly in issue his mental condition vis-a-vis suicide, he did so indirectly in the same manner as did Carfora’s presentation of testimony that he could not have participated in a robbery because he was on crutches when it took place. Were we dealing with a matter governed by the physician-patient privilege, therefore, the reasoning of Carfora and Soney would appear sufficient to permit introduction of Dr. Sharma’s testimony over objection based on privilege (see, Ann., 44 ALR3d 24,121 ff; but cf. People v Shapiro, 308 NY 453, 458-459).
What we deal with, however, is a case involving not a person authorized to practice medicine, but a psychologist registered under the Education Law. CPLR 4507 provides that “[t]he confidential relations and communications between a psychologist registered under the provisions of * * * the education law and his client are placed on the same basis as those provided by law between attorney and client, and nothing in such article shall be construed to require any such privileged communications to be disclosed.” Neither the memoranda of the Department of Education and the Department of Mental Hygiene which preceded introduction of the legislation which ultimately became CPLR 4507 (1956 NY Legis Ann, at 214-215; 1956 McKinney’s Session Laws of NY, at 1928-1929), nor the Governor’s message of approval (1956 NY Legis Ann, at 479; 1956 McKinney’s Session Laws of NY, at 1684) gives any indication of the reason for placing the psychologist’s privilege on the same footing as that between attorney and client rather than physician and patient.[1] The reason may have been historical, for the law developing in other States at that time was that the testimony of a psychiatrist employed by defendant’s attorney, who rendered a negative report, was barred by the attorney-client *179 privilege and unavailable to the prosecution, even though defendant became a witness in his own behalf (see, e.g., State v Kociolek, 23 NJ 400,129 A2d 417), a position not passed upon by this court until 1976, when in People v Edney (39 NY2d 620, 624, supra) it was repudiated.
Whatever the reason, however, in the face of the Legislature’s equation of the psychologist-client privilege with that between attorney and client and the marked difference between our case law holding the doctor-patient privilege, waived under circumstances in which the attorney-client privilege has been held not waived, we cannot agree with the Appellate Division’s conclusion that the psychologist-patient privilege is no broader than the doctor-patient privilege. In a line of cases going back at least to the turn of the century, we have held that a party who testifies in his or her own behalf may not be cross-examined concerning statements to his or her attorney, nor may the attorney be called as a witness to such statements (People v Glenn, 52 NY2d 880 [cross-examination of defendant re discussion with attorney of justification defense, error]; People v Shapiro, 308 NY 453, supra [cross-examination of defendant re discussion with attorney concerning whereabouts of a possible witness for defendant, error]; Kaufman v Rosenshine, 183 NY 562, affg 97 App Div 514 [error to permit wife’s attorney to be called to rebut her testimony on cross-examination that she had told the attorney about all of her assets]; People v Moore, 42 AD2d 268 [error to permit cross-examination of defendant concerning whether he made a written statement for his attorney]; see, People v Lynch, 23 NY2d 262 [statement by accomplice to his lawyer not discoverable by defendant as Rosario material, even though accomplice had been granted immunity]).
The reasons for the refusal to imply a waiver of the attorney-client privilege from the circumstance that the client took the stand in his or her own behalf are forcefully stated in People v Shapiro (308 NY, at p 459, supra): “To say that the broad protection of such policy is not available to a defendant when he takes the stand in a criminal case would entail consequences far more detrimental to the interests of society than does rejection of the evidence that might be disclosed. When the client, especially one accused of crimes, asks for advice and guidance in the premises, he should be able to speak freely without any fear and in full confidence that what is said by him or to him by his attorney will not be subsequently subject to disclosure if he takes the witness stand during the trial of his case. Any other policy than strict inviolability, unless expressly waived, would *180 seriously hamper the administration of justice, for the client would perhaps refrain from telling the truth or withhold the truth, while the lawyer would be reluctant to give the correct advice and counsel if he thought it would be subject to disclosure in the event his client took the stand to testify in his own behalf. It is for these and other reasons that the rule against disclosure is of such importance and that it may not be waived except as the statute provides with ‘the express consent’ of the client (cf. Matter of People v. Cravath, 58 Misc. 154). The privilege of nondisclosure belongs to the client alone (Svenson v. Svenson, 178 N. Y. 54) and disclosure should not be compelled when a client’s liberty is at stake in a criminal trial.” That holding is, moreover, the prevailing view (8 Wigmore, Evidence § 2327, at 637-638 [McNaughton rev ed]; McCormick, Evidence § 93, at 224 [3d ed]; Richardson, Evidence § 418 [Prince 10th ed]; Fisch, New York Evidence § 530 [2d ed]; 3 Wharton’s Criminal Evidence § 561 [13th ed]; Ann., 16 ALR3d 1029; 51 ALR2d 521), and we must conclude from the specific statutory language quoted above, the view the Legislature intended to have applied with respect to a communication to a psychologist (see, Matter of Queen [Ortmeyer], 233 NYS2d 798).[2] Admission of Dr. Sharma’s testimony was, therefore, error.
Ill
The testimony at the suppression hearing was that defendant requested an attorney when Trooper Peptis and Investigator McElligott interviewed him at the hospital at 12:58 a.m. on May 17th and that Investigators Bernardi and Burrell then interviewed him at 1:53 a.m. the same day. The People seek to avoid suppression of the statements made to Bernardi and Burrell by pointing to Trooper Peptis’ trial testimony that the time of the interview was not 12:58 a.m. but 2:58 a.m. We have, however, several times made clear that the propriety of the denial of a suppression motion must be judged on the evidence before the suppression court and that evidence subsequently admitted at the trial cannot be used to support the suppression court’s denial (People v Dodt, 61 NY2d 408, 417; People v Gonzalez, 55 NY2d 720, 721-722). That ruling finds its roots in the potential for abuse and injustice referred to in People v Havelka (45 NY2d 636). The statements to Bernardi and Burrell should have been suppressed, therefore, as the Appellate Division held, and on retrial such evidence must be excluded.
*181 For the foregoing reasons, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Jasen, Simons, Kaye and Alexander concur; Judge Titone taking no part.
Order reversed, etc.

. In National Psychological Assn. for Psychoanalysis v University of State of N. Y. (8 NY2d 197, 201-202), we noted that the provision (then Education Law § 7611) equated the psychologist-client relation with that of attorney and client and stated “[i]n this aspect, its sponsors felt that the statute would encourage bona fide psychologists with university training and professionally supervised experience to offer their needed professional services to the public in increasing numbers.” When the provision was moved from the Education Law to the CPLR at the suggestion of the Law Revision Commission, that body noted the above-quoted language of the National Psychological Assn, decision, but did not otherwise comment on the reason for relating the privilege it provided for to the attorney-client rather than the physician-patient privilege (1968 Report of NY Law Rev Commn, at 207 ff). The Proposed Code of Evidence for the State of New York now under legislative consideration would conform the psychologist-client privilege with the physician-patient privilege 0compare, Proposed Code of Evidence §§ 509, 510).

. To the extent that State of Florida v Axelson (80 Misc 2d 419) is to the contrary, it is not to be followed.