Gabrielli, J.
The defendant has been twice convicted for the murder of his wife. In the early morning hours of April 22, 1964, he killed his wife by striking her about the head with a metal fireplace poker and stabbing her with a large meat fork. After indictment, he was found mentally unfit to stand trial and commitment to Matteawan State Hospital followed. Later certified capable to conduct his defense he was arraigned and interposed a defense of “ not guilty by reason of insanity.” Upon the trial, and over objection, a prosecution-retained doctor was permitted to testify regarding defendant’s sanity and that he was, in fact, a malingerer. Because the examination had been conducted without court order and notice to defendant’s counsel, and for the further failure to conduct the exam= ination in accordance with statutory mandates, his conviction was reversed and a new trial ordered (31 A D 2d 838); and we affirmed (26 NY 2d 473).
His second trial for murder commenced on March 1, 1971 terminating in a guilty verdict on March 28, and the Appellate Division affirmed. He now comes to our court by permission and seeks reversal contending principally that his physician-patient privilege was violated when the prosecution produced Dr. Lanzkron, a psychiatrist who had treated him at Matteawan *264 and who testified the defendant was sane at the time of the slaying. Prior to the production of Dr. Lanzkron, however, and of critical significance to the determination of this appeal, the defendant offered the testimony and certain medical records of a psychiatrist at Central Islip State Hospital, who had examined him shortly after the murder and who testified that the defendant was insane when examined and in his opinion was insane at the time the crime was committed.
The stark and major question presented in the context of this background, concerns the defendant’s waiver of his physician-patient privilege.
At common law, there was no rule prohibiting the disclosure of communications between a physician and patient (Edington v. Aetna Life Ins. Co., 77 N. Y. 564, 569). In New York in 1828 this rule was changed by statute (Rev. Stat. of N. Y., part III, ch. VII, tit. III, § 73; and see 8 Wigmore, Evidence, § 2380) and the privilege has been so recognized since that time.*
The purpose of this rule and the reason motivating the Legislature to establish this physician-patient privilege “is to protect those who are required to consult physicians from the disclosure of secrets imparted to them, to protect the relationship of patient and physician and to prevent physicians from disclosing information which might result in humiliation, embarrassment, or disgrace to patients ” (Steinberg v. New York Life Ins. Co., 263 N. Y. 45, 48-49) (see, also, Edington v. Mutual Life Ins. Co. of N. Y., 67 N. Y. 185, 194; Richardson, Evidence, § 444, p.453).
We hold that where insanity is asserted as a defense and, as here, the defendant offers evidence tending to show his insanity in support of this plea, a complete waiver is effected, and the prosecution is then permitted to call psychiatric experts to testify regarding his sanity even though they may have treated the defendant (cf. People v. Carfora, 25 N Y 2d 972). When the patient first fully discloses the evidence of his affliction, it is he who has given the public the full details óf his case, thereby disclosing the secrets which the statute was designed to protect, thus creating a waiver removing it from the operation of the
*265 statute (Gapron v. Douglass, 193 N. Y. 11; Koump v. Smith, 25 NY 2d 287; Davis v. Davis, 1A D 2d 675; Waiver of Privilege As Regards One Physician As A Waiver As To Other Physicians, Ann., 5 ALR 3d 1244,1247-1251); and once the privilege is thus waived, there is nothing left to protect against for once the revelation is made by the patient there is nothing further to disclose 1' for when a secret is out it is out for all time and cannot be caught again like a bird and put back in its cage. * * * The legislature did not intend to continue the privilege when there was no reason for its continuance and it would simply be an obstruction to public justice ” (People v. Bloom, 193 N. Y. 1, 10).
Defendant’s remaining contentions are insubstantial and do not require reversal. In particular, we note that the claimed error in the receipt of the testimony of a fellow convict, was precipitated by defendant’s own questioning and, further, there is no substance to the claim that the court coerced the jury into reaching a verdict, particularly where the defendant failed to object or take exception to the court’s instruction to make an attempt to reach a verdict in a trial of considerable duration. (Of. People v. Randall, 9 N Y 2d 413, 426.)
The order affirming the judgment of conviction should be affirmed.
Judges Burke, Breitel, Jasek, Jokes and Waohtler concur with Judge (xabrielli; Chief Judge Fuld dissents and votes to reverse.
Order affirmed.

 The privilege, while not one of constitutional magnitude, is a creature of statute now set forth in CPLR. .4504 and made applicable to criminal actions by CPL 60.10 (formerly Code Crim. Pro., § 392).