Gabrielli, J.
Defendant was charged with kidnapping and the brutal killing of the eight-year-old daughter of his former girlfriend. He interposed the defense of insanity.
The jury found defendant guilty, as charged, of manslaughter, first degree and kidnapping in the first and second degrees. He was sentenced to a term of 25 years to life on the first degree kidnapping charge and to concurrent terms of up to 25 years on the other charges. The Appellate Division unanimously affirmed.
The critical and principal issue is whether the testimony of a psychiatrist, who had examined defendant prior to trial at the request of his attorney, was admissible over objections that the physician-patient and attorney-client privilege acted to bar its admission.
At trial, the prosecution showed that late in the afternoon on July 24, 1968, defendant grabbed Lisa Washington, the victim, off the street where she was playing with friends, and forcibly pushed her into a taxicab. At approximately 8:30 p.m., Lisa’s aunt, with whom she was residing, received a call from defendant who stated that "If you don’t get 'C’ [the nickname of Lisa’s mother] on the phone in the next couple of hours, I am going to rape and kill Lisa”. A barmaid testified that defendant and a young girl were in the Nu-Way Lounge at about 9:30 p.m. and that she observed defendant leave the tavern with the girl, walk around a corner toward the back of the building, and return a short while later without her. Less than an hour later, police officers, responding to a call by a woman who had reported a disturbance in her backyard which adjoined the rear of the Nu-Way Lounge, found Lisa’s lifeless body. She had been stabbed 11 times. The police questioned persons in the bar and learned of defendant’s presence in the bar earlier in the evening with a little girl.
Defendant was located at his father’s home early the next morning and taken into custody. As he was leaving with the officers, he was asked by his father whether he had "hurt that little child”, to which he replied "I’m sorry, I’m sorry”. Granules of dirt taken from defendant’s trousers confirmed that defendant had been in the area behind the Nu-Way Lounge.
Following his arrest, and after receiving the standard prein *623 terrogation admonitions (Miranda v Arizona, 384 US 436), defendant volunteered to a detective that he had been in the Nu-Way Lounge that evening, that he had been hearing voices which told him that God wanted Lisa, and that he might have killed Lisa but he was not sure. Taking the witness stand in his own defense, defendant testified that on the day in question, he had drunk large quantities of alcohol, had been smoking marijuana cigarettes, and that sometime after 9:00 p.m., he and Lisa had left the Nu-Way Lounge to go to his father’s place; that he might have killed Lisa but he was not sure he had done so. He recalled walking to a cab across the street from the bar but could remember no more. He explained that he regained consciousness under a tree near his father’s home and that he walked inside and blacked out; the next thing he was able to remember was someone pounding on him to wake up because the police were there.
A psychiatrist called by the defense testified that defendant suffered from paranoid schizophrenia of mild severity and that the condition was of long standing. It was his opinion that defendant was mentally ill to such an extent that he was unaware of the nature and quality of his act and did not know that his act was wrong.
In rebuttal, the prosecution called Dr. Daniel Schwartz, a psychiatrist, who originally examined defendant at the behest of defendant’s attorney, who was not present during the examination. The defense unsuccessfully objected to his testifying on the ground that the attorney-client and physician-patient privileges barred his testimony. Dr. Schwartz described defendant as having an alcoholic psychosis which occasionally manifested itself through hallucinations and delusions; however, he found no evidence of an underlying disease or defect. It was his opinion that at the time of the murder defendant knew and appreciated the nature of his conduct and knew that such conduct was wrong.
Another rebuttal psychiatrist, who had independently examined the defendant for the prosecution, supported the conclusions of Dr. Schwartz that defendant knew and appreciated the nature of his conduct and that such conduct was wrong.
Two other psychiatrists, produced by the defense as surrebuttal witnesses, each testified that he was unable to form an opinion as to whether defendant knew or appreciated the nature of his acts, or whether such acts were wrong, although *624 they did agree that defendant had some form of mental disease.
People v Al-Kanani (33 NY2d 260) is dispositive of the physician-patient privilege claim. There we held (pp 264-265):
"that where insanity is asserted as a defense and * * * the defendant offers evidence tending to show his insanity in support of this plea, a complete waiver is effected, and the prosecution is then permitted to call psychiatric experts to testify regarding his sanity even though they may have treated the defendant (cf. People v. Carfora, 25 N Y 2d 972). When the patient first fully discloses the evidence of his affliction, it is he who has given the public the full details of his case, thereby disclosing the secrets which the statute was designed to protect, thus creating a waiver removing it from the operation of the statute (Capron v. Douglass, 193 N. Y. 11; Koump v. Smith, 25 N Y 2d 287; Davis v. Davis, 1 A D 2d 675; Waiver of Privilege As Regards One Physician As A Waiver As To Other Physicians, Ann., 5 ALR 3d 1244, 1247-1251); and once the privilege is thus waived, there is nothing left to protect against for once the revelation is made by the patient there is nothing further to disclose 'for when a secret is out it is out for all time and cannot be caught again like a bird and put back in its cage. * * * The legislature did not intend to continue the privilege when there was no reason for its continuance and it would simply be an obstruction to public justice’ (People v. Bloom 193 N. Y. 1, 10)”.
Our holding in the case now before us comports with this rationale and is but a logical extension of our determination in Al-Kanani.
Equally unavailing to defendant is the claim that the attorney-client privilege bars admission of Dr. Schwartz’ testimony. Essentially, defendant relies on decisions in other jurisdictions (United States v Alvarez, 519 F2d 1036; City & County of San Francisco v Superior Ct. of City & County of San Francisco, 37 Cal 2d 227; Lindsay v Lipson, 367 Mich 1; and State v Kociolek, 23 NJ 400; but see Friedenthal, Discovery and Use of an Adverse Party’s Expert Information, 14 Stan L Rev 455, 463-465) which have excluded such testimony apparently because a psychiatrist would inevitably be required to reveal a defendant’s statements to him to justify his opinion and because a contrary rule would deter attorneys from freely seeking sound professional advice as to the soundness of an insanity plea. We do not find the reasoning of these cases *625 compelling and, accordingly, do not follow them. Rather, we think the better rationale underlies the Al-Kanani rule that a plea of innocence by reason of insanity constitutes a complete and effective waiver by the defendant of any claim of privilege.
A defendant who seeks to introduce psychiatric testimony in support of his insanity plea may be required to disclose prior to trial the underlying basis of his alleged affliction to a prosecution psychiatrist (Matter of Lee v County Ct. of Erie County, 27 NY2d 432, 442, cert den 404 US 823; People v AlKanani, supra; cf. Koump v Smith, 25 NY2d 287). Hence, where, as here, a defendant reveals to the prosecution the very facts which would be secreted by the exercise of the privilege, reason does not compel the exclusion of expert testimony based on such facts, or cross-examination concerning the grounds for opinions based thereon. It follows that no harm accrues to the defense from seeking pretrial psychiatric advice where an insanity plea is actually entered, for in such circumstances, the underlying factual basis will be revealed to the prosecution psychiatrist. Conversely, were the defendant not to enter an insanity plea, no physician-patient waiver would occur and any information divulged to the psychiatrist would remain privileged. There is, therefore, no deterrent to seeking expert psychiatric advice for, in one instance, there will be disclosure to the prosecution in any event and, in the other, disclosure will never occur. In short, no reason appears why a criminal defendant who puts his sanity in issue should be permitted to thwart the introduction of testimony from a material witness who may be called at trial by invoking the attorney-client privilege anymore than he should be able to do so by invoking the physician-patient privilege.
This is not to say, however, that an attorney cannot consult a psychiatrist in order to obtain advice concerning the efficacy of an insanity plea or, for that matter, any trial strategy, without fear of later courtroom disclosure. The product of such a consultation is protected, of course, by the work product doctrine (see CPLR 3101). However, that doctrine affords protection only to facts and observations disclosed by the attorney. Thus, it is the information and observations of the attorney that are conveyed to the expert which may thus be subject to trial exclusion. The work product doctrine does not operate to insulate other disclosed information from public exposure.
*626 It is significant that the underlying purpose of the attorney-client privilege would not be diminished by the admission of the testimony of Dr. Schwartz. The privilege is grounded in the salutary policy of encouraging "persons needing professional advice to disclose freely the facts in reference to which they seek advice, without fear that such facts will be made public to their disgrace or detriment by their attorney” (Hurlburt v Hurlburt, 128 NY 420, 424; see 8 Wigmore, Evidence [McNaughton Rev], § 2291; Richardson, Evidence [10th ed], § 410; 5 Weinstein-Korn-Miller, NY Civ Prac, par 4503.01; Radin, The Privilege of Confidential Communication Between Lawyer and Client, 16 Cal L Rev 487). That policy is not harmed, however, by the admission of evidence which, in any event, in these circumstances would be available to the prosecution. Indeed, with respect to the testimony of Dr. Schwartz, it is readily apparent that the traditional and statutory requirements of an attorney-client relationship were simply not established (CPLR 4503, subd [a]). We hold, therefore, that the privilege was inapplicable.
We find no merit in defendant’s other contentions.
Accordingly, the order of the Appellate Division should be affirmed.