OPINION OF THE COURT
Michael R. Juviler, J.
This is an opinion explaining an order entered September 13, 1983, granting the People’s motion to vacate the defendant’s plea of not responsible by reason of mental disease (CPL 220.15).
Two indictments have been filed against the defendant, accusing him of 18 counts of robbery in the first or third degree. The charges are that from December 6, 1980 to January 5, 1981, on separate dates, the defendant forcibly stole property. Five of the alleged crimes had the same victim, four another victim and three a third victim.
On April 13, 1983, with the consent of the People, the court accepted the defendant’s plea of not responsible on the basis of psychiatric reports that defendant suffered from a mental illness, posttraumatic stress disorder, caused by his service in the United States Air Force in Vietnam. On June 7, the People moved to vacate the plea on the ground that it was obtained by fraud by the defen *550 dant; the People submitted a certified copy of defendant’s Air Force file, which showed that he had never served in Vietnam.
The defendant opposed the People’s motion on several grounds: The court had no authority to set aside the plea; setting it aside without the defendant’s consent would subject him to double jeopardy; and the evidence presented by the People to justify vacating the plea was obtained by them without the defendant’s consent, in violation of the defendant’s Fourth Amendment right to privacy and section 552a of title 5 of the United States Code, the Federal Privacy Act.
The court makes the following findings of fact and conclusions of law:
THE FACTS
Except for a dispute about whether the defendant served in Vietnam and suffered from a mental disorder resulting from that service, the primary facts are undisputed.
On April 13, 1983, defendant tendered a plea of not responsible by reason of mental disease or defect, pursuant to CPL 220.15. The defendant contended that he was not criminally responsible due to his inability to appreciate the wrongfulness of his acts because of posttraumatic stress disorder resulting from his experiences in Vietnam as a member of the Armed Forces. In response, the People conceded that the defense of lack of criminal responsibility could not be disproved beyond a reasonable doubt.
In considering this issue, I examined many psychiatric reports, starting with those dated October 1, 1981, prepared by Doctors Adolph Goldman and Franklin S. Klaf, pursuant to CPL article 730. Both doctors had concluded that the defendant did not, as a result of mental disease or defect, lack capacity to understand the proceedings against him or to assist in his defense. They noted, however, the defendant’s explanation that “it started off with Vietnam * * * the real reason I was sent to Vietnam, the NVA told me was to be killed.” The defendant added: “Just came out of jail and they drafted me * * * I was in the Blue Berets in the Air Force. They sent me to kill those people hoping I’d be killed myself.”
*551 One doctor pointed out that a psychiatrist had told the defendant that “Vietnam did a job on you * * * [but] you’ll make it.” The defendant reportedly could not hold down a job and finally began using drugs again: “I had used some in Vietnam, at the time I was wounded.” The report also stated that at the time of his arrest in this case, the defendant was using heroin and cocaine, up to $200 a day. He stated, “I was trying to quell my nightmares” about Vietnam. The doctor noted that defendant had recently joined the Black Israelites.
The defendant was subsequently examined by a defense-appointed psychiatrist, Dr. Murray A. Gordon. His report, dated January 2, 1982, found the defendant unfit to proceed, suffering from “post-traumatic stress disorder, severe and chronic.” He described the defendant as “agitated”; he “paced back and forth, was tearful and appeared genuinely anxious and depressed.” The doctor noted that Lockett was “altogether pre-occupied with experiences of that war which reportedly continue to plague him and which repeatedly distracted him to the point where he could not effectively attend to the issues.”
The doctor further noted that the defendant reported “ongoing stress, being under fire, witnessing fellow soldiers being impaled or blown apart by land mines, having to carry parts of bodies to record a body count”. Dr. Gordon continued: “He reports mounting feelings of guilt, anger, and resentment at the lack of recognition for his efforts when he eventually returned home to the United States. There were no hurrahs, no welcome.’ Instead, he recalls he was confronted with the racial baitings of Texas red-neck senior officer, was evaluated by a battery of psychiatrists, and was declared to have a ‘personality problem’ at Randolph AFB, Texas. His difficulties in adjustment were compounded by several months of alcohol abuse.”
Dr. Gordon found that Lockett’s “verbal content” reflected persistent nightmares of his Vietnam experiences. Lockett reported reliving these experiences when triggered by stimuli in his present-day environment, such as the roar of jets from LaGuardia Airport while he was housed at Rikers Island.
*552 The doctor concluded, “This defendant is presently not competent to proceed and requires a period of in-patiént psychiatric hospitalization and treatment.” Dr. Gordon also questioned the defendant’s responsibility for his actions; noting the unusual pattern of the crimes, he speculated that Lockett might have been seeking to be shot himself.
On this report, the Honorable Joseph Slavin found Lockett incompetent and issued an order of commitment dated January 13, 1982, for treatment at Mid-Hudson Psychiatric Center.
Three months later, Dr. Erdogan Teckben, the director of the Mid-Hudson Psychiatric Center, found Lockett suffering from “personality disorder” but fit to proceed. In recounting the examination of the defendant, Dr. Teckben reported that when asked how he was going to plead to the charges, Lockett had answered: “Not responsible. You know there was a war monument and the inscription read something like this. ‘When you return to your country, remember to tell what happened there.’ But if they say that Vietnam wasn’t enough to make a man go out of his mind then they will never understand.” Doctor Teckben concluded, however, that the defendant was fully aware of his legal situation. The finding of competency was judicially confirmed on May 12, 1982.
On September 15, however, an order was signed by the Honorable Edward K. Pincus to have the defendant undergo another article 730 examination because of the defendant’s deteriorating condition and tendency toward violence.
In a psychiatric report dated September 17, 1982, Dr. Klaf now found the defendant unfit. The defendant maintained that the court is the servant of the King of Babylon, and “I fought in the jungles of Vietnam * * * you don’t know what it is like * * * you walk through jungles and swamps where leeches suck your blood * * * I am still a soldier here.”
The psychiatric report noted that at the time Lockett was arrested, he was studying at a college, but was not doing well. The reasons given to the doctor were: “I was bombing out * * * I was having a hard time sleeping at *553 night * * * I was an accountant for the Coast Guard * * * I finally resigned from that job * * * I went to the VA for help and they didn’t give me any help * * * I never lost touch with reality * * * I am still in Vietnam. When I came back from Vietnam I was trying to drink away reality * * * I was drinking anything * * * I became an alcoholic.”
In psychiatric reports prepared by Dr. Goldman and Dr. Anthony Jimenez, dated September 22 and September 24, by contrast, Lockett was found fit to proceed. These findings were judicially confirmed. The defendant’s application to plead not responsible followed.
In connection with the defendant’s application, I granted a People’s application to require the defendant to submit to examination by a psychiatrist chosen by the People, Dr. Stanley Brodsky. At the hearing on April 13, the People reported that Dr. Brodsky had found that Lockett suffered from a mental disease, posttraumatic stress disorder, resulting from his Vietnam experience. The People concluded that they could not disprove the defense of lack of responsibility beyond a reasonable doubt. The court agreed, and accepted the plea.
At the close of the hearing, I ordered that Lockett be examined pursuant to CPL 330.20 (subd 2), to determine whether he was currently dangerously mentally ill. A hearing pursuant to CPL 330.20 (subd 6) was scheduled for May 13. It was adjourned to June 7, because of new developments.
THE PRESENT MOTIONS
On June 7, the People moved to vacate the plea, on the ground that it was induced by fraud. The People contended that defendant was never in Vietnam; they submitted a certified copy of his Air Force record, which showed that he had never left Randolph Air Force Base, in Texas, where he was an accounting clerk.
The People noted that before they consented to the plea of not responsible, they had subpoenaed the defendant’s military record, but the National Personnel Records Center had returned the subpoena without complying, because certain Federally required procedures had not been followed.
*554 Only after the People had consented to the defendant’s plea on April 13, and in preparation for the initial commitment hearing, did the People learn that the defendant was never in Vietnam. This information was obtained pursuant to a court-ordered subpoena, dated May 10,1983, signed by me.
The court relieved the defendant’s counsel (his second) on counsel’s request because of the new evidence and Lockett’s refusal to say whether he had been in Vietnam. A new lawyer was appointed.
The defendant, upon an affirmation of his new lawyer in opposition to the People’s motion, alleged that vacating the plea would be unauthorized and would subject the defendant to double jeopardy. The defendant moved to “suppress” his military records. Defendant claimed that CPL 330.20 provided no basis to subpoena them, and that obtaining them without his permission violated the Fourth Amendment and section 552a of title 5 of the United States Code.
Thereafter, both sides submitted further papers, Lockett now claiming, through counsel’s affirmation, that he had been in Vietnam, in a “secret” assassination unit, from December, 1972 to “approximately” June, 1974, and that he was this cohort’s sole survivor. Upon argument of the motions, the court said that it would grant the defendant an evidentiary hearing, and offered to receive the defendant’s testimony or any other defense evidence to show that he had been in Vietnam. The defendant declined to introduce any evidence.
I found that the People had shown by uncontroverted documentary evidence that Lockett never was in Vietnam, and that, therefore, the plea was obtained by fraud. The plea was vacated, and the actions returned to the Trial Calendar.
CONCLUSIONS OF LAW
“The inherent power of a court to set aside its judgment * * * procured by fraud and misrepresentation cannot be doubted” (Matter of Lyons v Goldstein, 290 NY 19, 25; see People v Dishaw, 54 AD2d 1122; People v Bartley, 60 AD2d 283). Although established in criminal cases in which the *555 prosecution committed the fraud to secure a plea of guilty, this principle applies equally to fraud by the defendant to obtain acceptance of a plea (see People v Selikoff, 35 NY2d 227, 242).
The court was permitted to receive the defendant’s military record as evidence of this fraud. That record, lawfully subpoenaed by the People, was pertinent to the anticipated issues at the hearing scheduled under CPL 330.20.
Contrary to his argument, the defendant’s military record was not protected by a statutory privilege under the Federal Privacy Act (US Code, tit 5, § 552a). The Privacy Act exempts from privacy any personnel records, such as these, that are disclosable under the Federal Freedom of Information Act (FOIA; US Code, tit 5, § 552). The FOIA has several provisions authorizing disclosure of these records.
For example, it provides that “each agency” of the Federal Government (§ 552, subd [a], par [3]), including “any * * * military department” (§ 552, subd [e]) shall make available personnel files the disclosure of which would not constitute “a clearly unwarranted invasion of personal privacy” (§ 552, subd [b], par [6]). No such invasion occurs from evidence that Lockett was an accounting clerk in Texas, used to cure a fraud on the court (see, e.g., Department of Air Force v Rose, 425 US 352 [Air Force personnel files disclosable after in camera inspection]; Simpson v Vance, 648 F2d 10 [State Department employees’ names, education, employment experience, promotional history, military service, and post assignments disclosable]; Disabled Officer’s Assn. v Rumsfeld, 428 F Supp 454 [accord names and addresses of all retired disabled military officers]; National Western Life Ins. Co. v United States, 512 F Supp 454 [accord names and duty stations of employees of U. S. Postal Service]).
As was ordered in Department of Air Force v Rose (supra), I inspected Lockett’s file in camera, after he was provided with a full copy of it. The defendant having limited the factual issues by claiming that his Vietnam service occurred only during a specified period (Dec. 1972 to June, 1974), I confined my consideration to records *556 covering that period.* Later records, which do contain certain unflattering reports, have not been considered on the People’s motion, are not included in the record of this proceeding, and will not be open to the public. The records considered by the court (listed in the footnote) contain neither prejudicial nor private material; they are neutral records of his assignment as an accountant at Randolph Air Force Base, Texas, and contain his signed acknowledgment, upon his discharge, that he had never served in “Indochina”.
The Privacy Act also permits disclosure of a personnel record for a “law enforcement” activity (US Code, tit 5, § 522a). The defendant’s records were subpoenaed by the District Attorney for a legitimate purpose related to law enforcement, to shed light on his present mental state, including possible dangerousness, by showing his condition during and after his alleged service in Vietnam.
In addition, the Privacy Act permits disclosure of an individual’s record for “routine use”. (US Code, tit 5, § 552a, subd [a], par [7]; subd [b], par [3].) That includes, as here, disclosure of a person’s record in response to a court’s subpoena during litigation with that specific individual (Stiles v Atlanta Gas Light Co., 453 F Supp 798).
Clearly, the defendant has no statutory right to preclude the court’s consideration of records of his assignments at Randolph Air Force Base.
Similarly, defendant had no Fourth Amendment right to bar consideration of his redacted file by the court. It was not his property, and he had no reasonable expectation of privacy in its bland recitation of his assignments (see, e.g., Fisher v United States, 425 US 391 [taxpayer has no Fourth Amendment right to bar IRS subpoena for taxpayer’s records in his lawyer’s files]; United States v Miller, 425 US 435 [depositor may not bar subpoena of bank’s records]; Couch v United States, 409 US 322 [taxpayer has no right to prevent subpoena for his accountant’s files]; United States v Snyder, 668 F2d 686 [union officer and *557 union files]; People v Di Raffaele, 55 NY2d 234 [telephone subscriber and telephone company records]).
In addition, the defendant “opened the door” to the subject of his military service by asking the court to accept his plea of lack of responsibility based on his military service. He may not use alleged statutory or constitutional rights as a protection for fraud after he put that service in issue (see, e.g., Koump v Smith, 25 NY2d 287 [doctor-patient privilege protecting hospital records is waived by placing mental or physical condition in issue]; People v Al-Kanani, 33 NY2d 260, 264 [doctor-patient privilege waived by plea of insanity]; People v Ricco, 56 NY2d 320 [statement taken in violation of right to counsel may be used to confront defendant who testifies differently]; Harris v New York, 401 US 222 [accord statement taken in violation of Miranda rights]; cf. Matter of Holtzman v Hellenbrand, 92 AD2d 405 [constitutional right of confrontation is no bar to introduction at trial of Grand Jury testimony of a witness, if defendant’s misconduct induced the witness’ refusal to testify at trial]).
The defendant’s remaining claim is that vacating the plea over his objection would subject him to double jeopardy. Indisputably, if he had convinced a trial jury to find him not responsible by reason of mental disease on the basis of fraudulent testimony about Vietnam, principles of double jeopardy would bar the People from seeking to vacate that verdict because of newly discovered evidence that he never was in Vietnam. But that is not the situation here. “[A]n accused must suffer jeopardy before he can suffer double jeopardy” (Serfass v United States, 420 US 377, 393). There has been no “trial” or “plea of guilty,” so there has been no previous jeopardy barring a trial (CPL 40.30; United States v Wilson, 420 US 332, 345). This is true even though the court “has relied to some degree on evidence” in making its ruling {supra, p 345). Although the court, in finding the “factual basis” required for the defendant’s plea (see CPL 220.15), relied on predictions as to the outcome of a trial and on potential trial evidence, no trial took place, so no jeopardy attached (Serfass v United States, supra). “[J]eopardy does not attach, and the constitutional prohibition can have no application, until a defendant is ‘put to trial before the trier of the facts, whether the *558 trier be a jury or a judge’ (Supra, at p 388.) That the defendant’s plea was the “functional equivalent” of a verdict after trial “has no significance in this context unless jeopardy has once attached and an accused has been subjected to the risk of conviction” (supra, at p 392).
In sum, the court was empowered to set aside the defendant’s plea on the basis of documentary evidence that he had defrauded the court. Similar fiascos might be avoided in the future by ordering a prepleading investigation, and recalling that a plea of not responsible is to be accepted only “with great care” (see People v Behr, 116 Misc 2d 576).

 These are denoted DD214, AF 909, covering Oct. 23, 1973-July 3, 1974; AF 909, covering Oct. 31, 1972-Oct. 23, 1973; special order No. 140, Oct. 26, 1973; serial order 139, Feb. 15,1973; enlistment certificates No. 133 (2 pp), and 001 (2 pp); and enlistment contract (2 pp).