■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES ROBERT GATES, Appellant. — Appeal from a judgment of the County Court of Essex County (Garvey, J.), rendered June 6, 1983, convicting defendant upon his plea of guilty of the crime of rape in the first degree. ¶ In the early morning hours of July 18, 1982, a five-year-old girl, while asleep in her bed, was abducted and then raped outside her home. The child's screams alerted her parents who took her to the hospital where she received emergency surgery to repair severe vaginal lacerations and treatment for multiple bruises including a subconjunctival hemorrhage of her left eye. ¶ At approximately 1:00 P.M. on this same day, State Troopers Henry Wit and George Jaques, spurred by their belief that a red headband found near the scene belonged to defendant, a 16-year-old boy, went to his house to talk with him. Defendant, who knew Wit personally, agreed to go for a ride with the officers and subsequently, without objection, to accompany them to the Raybrook substation, some 18 to 25 miles away. En route, Officer Wit advised defendant of his *Miranda* rights and that he was free

to leave at any time. During the ride, defendant made no incriminating statements. ¶ At the substation, after again being advised of his constitutional rights, this time by Officer Jaques, defendant orally admitted to Jaques and later to Wit that he had committed the crime. After the written confession was signed, defendant was officially informed that he was under arrest and thereupon arraigned. Defendant, claiming that he did not make the oral statements attributed to him, that he was not apprised of his *Miranda* warnings until after the typed confession was signed, and that he never read the confession, moved to suppress both oral statements as well as the written one. That motion was denied following a hearing and defendant thereafter pleaded guilty to rape in the first degree and was sentenced to 7 to 21 years in prison. ¶ Initially, we note that the suppression court's failure to make an explicit finding that defendant's statements were voluntary does not require a reversal, for a full and fair hearing was had and accepting as credible the officers' testimony, which the court was at liberty to do, the record more than amply supports the conclusion that defendant's various statements were voluntary beyond a reasonable doubt (see *Matter of Matthew O.,* 91 AD2d 1093, app dsmd 59 NY2d 760, mot for lv to app den 60 NY2d 551; *People v Edney,* 47 AD2d 906, affd 39 NY2d 620). Although defendant was young, he was not questioned for an inordinate period of time and it is not without significance that he knew one of his questioners. Additionally, as the suppression court found, defendant, who was accustomed to hitchhiking, was free to leave at any time prior to his initial oral confession. Nor do we perceive any fundamental unfairness in Officer Jaques making known to defendant that mothers in the area were frightened that a rapist might be loose in the village and in the suggestion made to defendant by another officer that a bio-sensor dog available at the station might identify defendant from the scent on the headband. These statements simply served to aid in obtaining a declaration that was naturally born of remorse, relief or desperation (see *People v Tarsia,* 50 NY2d 1, 10). Given the evidence adduced at the hearing and the suppression court's opportunity to hear and observe defendant testify, we are of the view, as the suppression court must also have been, that not only did defendant utter the statements imputed to him, but that they were voluntary. ¶ Defendant testified that he was not made aware of his *Miranda* rights until after the confession was signed. The court, however, chose to credit Officers Wit's and Jaques' testimony that he had effectively been informed of those rights orally twice before the confession was even reduced to writing. Furthermore, the *Miranda* monition is fully explained in the second paragraph of the written statement, which was read by defendant with the assistance of Wit, in the presence of Wit and Jaques. Accordingly, we see no reason to disturb the suppression court's ruling in favor of the People on the credibility issue (*People v Middleton,* 50 AD2d 1040, 1041, affd 43 NY2d 703). ¶ Moreover, contrary to assertions by defendant that his youth and limited mental capacity required the police to expound more fully than they did upon his right to counsel, we find that it was sufficiently explained. Defendant's youth is countered by his prior experience with the criminal justice system, and if he indeed suffers from any mental incapacity, it is at best slight. While the psychological evaluation in defendant's presentence report classified his condition as "borderline mental retardation", his over-all low IQ score is attributed to a very low score on vocabulary. The tests also indicate that his receptive vocabulary is much better than his expressive vocabulary. ¶ Not only did Jaques testify that both Wit's and his own recitations of *Miranda* included the phrase "had the right to an attorney and the right to have one present before any questioning was had", but the statement defendant read and ultimately signed set forth his "right to a lawyer and have him present with [him] while [he] is being questioned". This

testimony satisfactorily evidences that defendant knew that his right to counsel attached immediately and not at some future time (*California v Prysock,* 453 US 355, 360; *People v Dunnett,* 44 AD2d 733; see *People v Handley,* 85 AD2d 910). ¶ In light of defendant's age, the sentence does appear severe; however, the trial court's reasoning for such, namely the trauma to the victim and her family caused by his vicious assault and the defendant's lack of remorse, is well grounded. ¶ Judgment affirmed. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.