**STATE of Delaware**

v.

**Joseph SHIELDS, Defendant.**

Superior Court of Delaware, New Castle County.

Submitted: Sept. 14, 1990.
Decided: Sept. 17, 1990.

Kathleen Jennings and Jeffrey M. Taschner, Deputy Attys. Gen., Dept. of Justice, Wilmington, for the State.

Nancy Jane Perillo, Wilmington, for the defendant.

## OPINION

BARRON, Judge.

### BACKGROUND

Defendant, Joseph Shields, is charged by indictment with Murder in the first degree (2 counts), Unlawful Sexual Intercourse in the first degree, and Unlawful Sexual Penetration in the first degree. The charges stem from the alleged rape and murder of Brenda Coxe which allegedly occurred in New Castle County on or about April 8, 1990.

The defendant has moved, by and through his counsel, Nancy Jane Perillo, Esquire, to preclude Dr. David Raskin from psychiatrically evaluating him on behalf of the State. The defendant asserts that Dr. Raskin has been retained by the State to psychiatrically examine him regarding his competency to stand trial and his sanity at the time of the alleged incident.[1]

In addition to maintaining a private practice through which he was evidently retained by the State in this case, Dr. Raskin is also under contract with Correctional Medical Systems, Inc., to provide psychiatric services to inmates in the custody of the Delaware Department of Correction. Dr. Raskin delivers such services directly to many inmates, asserts the defendant, and also supervises other correctional mental health staff in providing mental health care to inmates. In those capacities, Dr. Raskin has, according to the understanding of defense counsel, been involved in the treatment of the defendant at Gander Hill during his current incarceration. The defendant's communications to Dr. Raskin with respect to that treatment are, concludes the defendant, confidential and privileged under Delaware Rule of Evidence 503. Defendant further concludes that Dr. Raskin has a professional duty of care to the defendant regarding such treatment.

---

1. Defendant asserts that the assigned prosecutors have indicated to defense counsel that Dr. Raskin has already seen the defendant at least once for the purpose of the evaluation, even though no order has yet been issued by the Court authorizing such evaluation.

The defendant contends, then, that the dual roles Dr. Raskin seeks to perform with respect to the defendant in this case clearly create a professional and ethical conflict of interest. His evaluation and treatment responsibilities to the defendant —who, because of his incarceration, is obviously not free to obtain mental health care elsewhere—may be affected by his evaluation responsibilities to the State. The defendant further asserts that it would seem virtually impossible for Dr. Raskin to separate information obtained from the defendant or other sources in connection with his treatment of the defendant, from information acquired in his more formal evaluation of the defendant on behalf of the State. The defendant contends that his evidentiary privilege under D.R.E. 503 could thus be compromised, and, at a minimum, he would be unable to freely and openly discuss his mental problems with Dr. Raskin as his treating psychiatrist, because that privilege would be in jeopardy. Finally, the defendant contends that his counsel could not provide adequate guidance to him or monitoring of the State's evaluation of him under such circumstances, and that, therefore, the defendant's right to the effective assistance of counsel in connection with such an evaluation, vouchsafed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sect. 7 of the Delaware Constitution, would be violated.

The defendant asserts that while Dr. Raskin may very well be called upon to provide his professional opinions regarding the defendant in this case, that should only be at the election of the defendant as his patient, and not at the instigation of the State.

Thus, the defendant moves that the Court preclude Dr. David Raskin from psychiatrically evaluating the defendant in the present case on behalf of the State.

The State, on the other hand, maintains that Dr. Raskin's role thus far has been primarily, if not exclusively, supervisory. The prosecution asserts that in his individual capacity, Dr. Raskin has not provided any counseling to the defendant. Further, the State contends that any psychiatrist-patient privilege which could be found to exist has been waived by virtue of D.R.E. 503(d)(3).

The Court concludes that no violation of the psychiatrist-patient privilege will result from authorizing Dr. Raskin to evaluate the defendant on behalf of the State, and that such an evaluation will not implicate or impinge upon any of the defendant's constitutional rights.

## PSYCHOTHERAPIST–PATIENT PRIVILEGE

■ D.R.E. 503(b) sets forth the general rule of privilege in this area. Subsection (b) states, in pertinent part, as follows:

(b) *General Rule Of Privilege:* A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications *made for the purpose of diagnosis or treatment of his physical, mental or emotional condition* ... (Emphasis added.)

This general rule of privilege is subject to three exceptions, two of which are applicable in the case *sub judice.* D.R.E. 503(d)(2) and (3) state, in pertinent part, as follows:

(2) *Examination By Order Of Court.* If the court orders an examination of the physical, mental or emotional condition of a patient, whether a party or a witness, communications made in the course thereof are not privileged under this rule with respect to the particular purpose for which the examination is ordered unless the court orders otherwise.

(3) *Condition An Element Of Claim Or Defense.* There is no privilege under this rule as to a communication relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense ...

On or about September 13, 1990, defense counsel filed with the Court a notice, pursuant to Rule 12.1 of the Superior Court Rules of Criminal Procedure, that the de-

fendant intends to rely upon the defense of insanity at the time of the alleged crimes. Further, counsel for defendant has previously moved for a competency hearing to determine the defendant's competency to stand trial. The Court is, in light of the above, prepared to sign an order authorizing the State to have the defendant psychiatrically evaluated by a psychiatrist of its choice to determine the issues of competency and sanity.

This is not a case where Dr. Raskin was hired by the defendant for consultation purposes. *See: United States v. Alvarez et al.,* 519 F.2d 1036 (3rd Cir.1975); cf. *United States v. Smith,* 425 F.Supp. 1038 (E.D.N.Y.1976). Nor has Dr. Raskin been the "treating physician" as that term is normally used. Here, the State has asserted that the role which Dr. Raskin has performed with regard to his association with Correctional Medical Systems, Inc. has been one of supervision rather than one of consultation or treatment. The State contends that the initial psychiatric assessments made by members of the prison mental health staff have been evaluated by Dr. Raskin as a normal procedure. On one occasion, Dr. Raskin apparently prescribed sleeping medication for the defendant following a complaint by the defendant to prison health employees. These actions are far from face-to-face counseling sessions for purposes of diagnosis or treatment which normally might be expected from a treating psychiatrist. The State has further contended that in his individual capacity, Dr. Raskin has not provided any counseling to the defendant. In light of the foregoing, it would appear that the only factual impediment to allowing Dr. Raskin to psychiatrically evaluate the defendant would arise in the event that the defendant requires psychiatric treatment prior to trial and that Dr. Raskin would be the only professional available to provide such treatment. In that event, defense counsel's concerns of ethical conflict and effective assistance of counsel may be justified. I am satisfied, however, with the State's assertion that Correctional Medical Services, Inc., has provided for such a contingency.

On September 11, 1990, Dr. Raskin apparently advised the State that the defendant, if necessary, would be treated at another facility within the Delaware Department of Correction and that such treatment would not be provided by Dr. Raskin. Defendant's concerns of an impossibility to separate information obtained from the defendant with regard to his treatment as opposed to his evaluation are thereby assuaged.

■ In that the defendant has placed in issue his competency and has indicated a reliance upon the insanity defense, the Court holds that the psychotherapist-patient privilege is waived with regard to these issues. At the same time, the Court is mindful that:

> Among physicians, the psychiatrist has a special need to maintain confidentiality. His capacity to help his patients is completely dependent upon their willingness and ability to talk freely. This makes it difficult if not impossible for him to function without being able to assure his patients of confidentiality and, indeed, privileged communication. Where there may be exceptions to this general rule ..., there is wide agreement that confidentiality is a *sine qua non* for successful psychiatric treatment. The relationship may well be likened to that of the priest-penitent or the lawyer-client. Psychiatrists not only explore the very depths of their patients' conscious, but their unconscious feelings and attitudes as well. Therapeutic effectiveness necessitates going beyond a patient's awareness and, in order to do this, it must be possible to communicate freely. A threat to secrecy blocks successful treatment.

Advisory Committee Notes to Proposed Rule 504, Federal Rules of Evidence, 56 F.R.E. 183, 242 (1972), quoting Report No. 45, Group for the Advancement of Psychiatry 92 (1960).

Such confidentially, however, dissipates when a case falls within the exceptions of D.R.E. 503(d)(2) or (3). The New York Court of Appeals, in *People v. Edney,* 39

N.Y.2d 620, 385 N.Y.S.2d 23, 350 N.E.2d 400 (1976), succinctly and persuasively stated the rule's waiver rationale thusly:

> [W]here insanity is asserted as a defense and ... the defendant offers evidence tending to show his insanity in support of this plea, a complete waiver is effected, and the prosecution is then permitted to call psychiatric experts to testify regarding his sanity *even though they may have treated the defendant.* When the patient first fully discloses the evidence of his affliction, it is he who has given the public the full details of his case, thereby disclosing the secrets which the statute was designed to protect, thus creating a waiver removing it from the operation of the statute; and once the privilege is thus waived, there is nothing left to protect against for once the revelation is made by the patient there is nothing further to disclose 'for when a secret is out it is out for all time and cannot be caught again like a bird, and put back in its cage.... The legislature did not intend to continue the privilege when there was no reason for its continuance and it would simply be an obstruction to public justice.' (Emphasis added.)

*Id.* at 624, 385 N.Y.S.2d at 25, 350 N.E.2d at 402, *see* also *State v. Valley,* Vt.Supr., 571 A.2d 579 (1989).

While there is a need to scrupulously defend confidentiality in the psychiatric-patient relationship, such defense must not be used as a shield "against the pressing societal need for the ascertainment of truth in litigation." *United States v. Smith, supra.* The veil of privilege falls when the privilege is waived as it has been in this case. In any event, the Court is satisfied that the role which Dr. Raskin has thus far filled with regard to the defendant cannot be characterized as that of a treating physician. And, "[i]nformation obtained by a physician ... in a ... supervisory capacity, as opposed to a professional or treating capacity, simply does not constitute privileged information." *State v. Sweet,* 142

Vt. 238, 453 A.2d 1131 (1982). In light of this fact and the other considerations previously adduced, the aspect of defendant's motion based on the psychotherapist-patient relationship is denied. The Court now turns to consider the defendant's constitutional challenge.

## THE CONSTITUTIONAL ISSUES

In *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the Supreme Court held that the prosecution's use of psychiatric testimony at the sentencing phase of Smith's capital murder trial to establish his future dangerousness violated his constitutional rights.[2]

In holding that the use of psychiatric testimony at the sentencing phase violated Smith's Fifth Amendment right against self-incrimination, the Court noted that no Fifth Amendment violation would occur if the psychiatrist had restricted his examination to ensuring that Smith understood the charges against him and was capable of assisting in his defense. Further, the Court noted that the interview was not analogous to a sanity examination occasioned by a defendant's plea of not guilty by reason of insanity. "When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he injected into the case.... [U]nder such circumstances, a defendant can be required to submit to an insanity examination conducted by the prosecutor's psychiatrist." *Id.* at 465, 101 S.Ct. at 1874, 68 L.Ed.2d at 370. However, "[a] criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding. Because respondent did not voluntarily consent to the pretrial psychiatric examination after being informed of his right to remain

---

**2.** In *Estelle v. Smith, supra,* the trial judge had ordered, *sua sponte,* the psychiatric examination and Smith neither had asserted an insanity defense nor had offered psychiatric evidence at trial.

silent and the possible use of his statements, the State could not rely on what he said to [the psychiatrist] to establish his future dangerousness." *Id.* at 468, 101 S.Ct. at 1876, 68 L.Ed.2d at 372.

The Court also held that Smith's Sixth Amendment right to the assistance of counsel had been violated because defense counsel were not notified in advance that the psychiatric examination would encompass the issue of their client's future dangerousness, and respondent was denied the assistance of his attorneys in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed.

No Sixth Amendment violation was found, however, in *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336, *reh. den.*, 483 U.S. 1044, 108 S.Ct. 19, 97 L.Ed.2d 807 (1987), where, unlike *Estelle v. Smith, supra,* the petitioner's counsel had himself requested the psychiatric evaluation. The Court stated:

> Petitioner attempts to bring his case within the scope of *Smith* by arguing that, although he agreed to the examination, he had no idea, because counsel could not anticipate, that it might be used to undermine his 'mental status' defense.... Petitioner, however, misconceives the nature of the Sixth Amendment right at issue here by focusing on the use of [the psychiatrist's] report rather than on the proper concern of this Amendment, the consultation with counsel, which petitioner undoubtedly had. Such consultation, to be effective must be based on counsel's being informed about the scope and nature of the proceeding. There is no question that counsel had this information. To be sure, the effectiveness of the consultation also would depend on counsel's awareness of the possible uses to which petitioner's statements in the proceeding could be put. Given our decision in *Smith,* however, counsel was certainly on notice that if, as appears to be the case, he intended

to put on a 'mental status' defense for petitioner, he would have to anticipate the use of psychological evidence by the prosecution in rebuttal. In these circumstances, then, there was no Sixth Amendment violation.[3]

*Id.,* 483 U.S. at 425, 107 S.Ct. at 2919, 97 L.Ed.2d at 357.

The petitioner, Buchanan, also alleged a Fifth Amendment violation but the Court, relying on *Estelle v. Smith, supra,* found otherwise:

> ... [I]f a defendant requests [a psychiatric] evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested. The defendant would have no Fifth Amendment privilege against the introduction of this psychiatric testimony by the prosecution.

*Id.* at 422, 423, 107 S.Ct. at 2918, 97 L.Ed.2d at 355.

The waiver issue was succinctly addressed in the recent case of *Powell v. Texas,* 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989). There, the Court stated:

> ... [T]he waiver discussions contained in *Smith* and *Buchanan* deal solely with the Fifth Amendment right against self-incrimination. Indeed, both decisions separately discuss the Fifth and Sixth Amendment issues so as not to confuse the distinct analyses that apply. No mention of waiver is contained in the portion of either opinion discussing the Sixth Amendment right. This is for good reason. While it may be unfair to the State to permit a defendant to use psychiatric testimony without allowing the State a means to rebut that testimony, it certainly is not unfair to require the State to provide counsel with notice before examining the defendant concerning future dangerousness. Thus, if a defendant were to surprise the prosecu-

**3.** In *Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), the Court reaffirmed its holding in *Estelle v. Smith, supra,* that defendants formally charged with capital crimes have a Sixth Amendment right to consult with counsel before submitting to psychiatric examinations designed to determine their future dangerousness.

tion on the eve of trial by raising an insanity defense to be supported by psychiatric testimony, the court might be justified in ordering a continuance and directing that the defendant submit to examination by a state-appointed psychiatrist. There would be no justification, however, for also directing that defense counsel receive no notice of this examination.

492 U.S. at ——, 109 S.Ct. at 3149, 106 L.Ed.2d at 556.

■■■ The aforementioned United States Supreme court opinions do not, in this Court's view, assist the defendant in espousing constitutional infirmities with regard to the facts of this case. Presumably, as a result of this decision, the prosecution will request a Court order, with notice to defense counsel, permitting the State to psychiatrically evaluate the defendant on the limited issues of competency and sanity. The Court sees no constitutional flaws in such a process. The notice requirement fulfills the State's duty under the Sixth Amendment. Defense counsel would then be in a position to counsel her client regarding the State's evaluation and regarding the scope thereof. Further, no *Miranda* warnings are necessary if Dr. Raskin restricts his evaluation to the issues of competency to stand trial and mental illness. *See: Re v. State*, Del.Supr., 540 A.2d 423 (1988); *Estelle v. Smith, supra.*

## CONCLUSION

The Court concludes that since the defendant has placed his mental condition in issue, any psychotherapist-patient privilege

which the defendant may have had, with regard to Dr. Raskin, has been waived, especially when, as here, the Court finds that Dr. Raskin's role has not been that of a treating physician but rather as a supervising consultant. Further, the Court concludes that no constitutional rights which the defendant may possess have been violated by the State's contemplated action in having the defendant psychiatrically evaluated by Dr. Raskin. Thus, the Court will sign an order permitting such an evaluation provided that the following conditions are set forth in such order in addition to those normal limitations on scope which routinely apply with regard to such evaluations:

1. That steps be taken forthwith to ensure access to a psychiatrist other than Dr. Raskin if psychiatric treatment and/or counseling of the defendant is warranted;[4] and

2. That Dr. Raskin's evaluation be predicated only upon interviews between himself and the defendant which occur subsequent to the issuance of the Court's order authorizing such evaluation.[5]

The defendant's Motion to Preclude Dr. David Raskin From Psychiatrically Evaluating the Defendant is Denied.

It Is So ORDERED.

■■■■■

4. When inmates with serious mental ills are effectively prevented from being diagnosed and treated by qualified professionals, the system of care does not meet the constitutional requirements as pronounced in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Due Process Clause would be violated under such scenario. *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754 (3rd Cir.1979).

5. Defense counsel, prior to any opinion testimony from Dr. Raskin, will be permitted *voir dire* of Dr. Raskin to determine if there has been compliance with this condition. Mindful that I have already found Dr. Raskin's role to have been supervisory rather than treating, thus, perhaps, obviating the need for this second condi-

tion, I nevertheless deem it warranted so as to assuage any lingering concerns defense counsel may have pertaining to the dual roles which she claims Dr. Raskin has served in connection with this case. If, as defense counsel asserts, Dr. Raskin has already evaluated the defendant on behalf of the State, I do not believe that that fact establishes a Sixth Amendment violation for the reason that the defendant's competency had already been raised by defense counsel and the competency issue would, therefore, have to be addressed prior to any trial. Defense counsel was aware, then, that psychiatric evidence would be presented by the State on that issue. *Re v. State, supra.*